State v. Norton et al.

---

## THE STATE v. NORTON ET AL.

1. The destruction or erasure of the endorsement on a promissory note, with intent to defraud any person, is a misdemeanor in New Jersey, and a conspiracy to do it is an indictable conspiracy under the statute.

2. When the common law and a statute differ, the common law gives place to the statute, but only when the latter is couched in negative terms, or where its matter is so clearly repugnant that it necessarily implies a negative.

3. The common law offence of conspiracy is not abolished by the statute defining conspiracy in certain cases, but such a conspiracy as was indictable before the statute at common law is so still.

4. Whether a conspiracy to injure or defraud an individual, or to commit a civil injury by means not in themselves criminal, is a misdemeanor at common law. *Quere.*—But a conspiracy to defraud an incorporated bank of issue, so that the securities for the circulation held by the public are impaired, is an offence of so public a nature that it is indictable at common law.

5. It is not necessary to constitute the crime of conspiracy, that the conspirators should succeed. At common law the mere conspiracy constituted the offence; under the statute, some act must be done in execution of the design agreed upon to complete the offence.

6. It is no ground to quash an indictment, that the name of one of the grand jurors in the caption is substantially different from his name in the panel, if in reality it was the same person. It is a mere misprision of the clerk, which is, of course, amendable.

7. An indictment charging a conspiracy, without setting out the means by which it was to be accomplished, or an overt act in its execution, is defective.

8. Each count in an indictment for conspiracy must contain an express charge in itself of the conspiracy; reference to a conspiracy, set forth in a previous count is not sufficient.

9. It is not the practice to strike out of an indictment such counts as may be held bad.

This was an indictment found at the Morris county Oyer and Terminer, and was removed, by the defendants, into this court by *certiorari*. The indictment contained ten counts.

The first count was as follows:

The grand jurors of the state of New Jersey, in and for the body of the county of Morris, on their oaths present, that Lambert Norton, William Thompson, Jacob M. King, Joseph Cutler, Samuel S. Doty, and David Sanderson, all late of the township of M., in the county of M., and state of N. J., on the 30th day of October, in the year 1839, at &c., and within the jurisdiction of this court, being persons of evil name and fame, and of dishonest conversation, and wickedly devising and intending, unjustly, unlawfully, and by indirect means, to cheat and defraud "the President, Directors, and Company of the State Bank at Morris," and other persons to the jurors aforesaid unknown, of their money, goods, chattels, promissory notes, and effects, on, &c., at, &c., within, &c., with force and arms, &c., did fraudulently, maliciously, and unlawfully conspire, combine, unite, confederate, and agree, between and among themselves, by wrongful and indirect means, and divers acts, unlawful and dishonest devices and practices, to cheat and defraud the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, of the money, goods, and chattels, promissory notes and effects, of and belonging to the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown; and that, in pursuance of the said conspiracy, combination, and agreement, made between and among them as aforesaid, the said L. N., W. T., J. M. K., J. C., S. S. D., and D. S., afterwards, to wit, on, &c., at, &c., and within, &c., fraudulently, maliciously, and unlawfully, and without the said bank receiving any consideration therefor, suffered,

caused, and procured the name of David Sanderson to be stricken off and erased from a certain promissory note, made by one Egbert A. Thompson, (by the name and description of E. A. Thompson) for the sum of ten thousand and fifty-seven dollars and sixty-eight cents, dated Morristown, September 4, 1849, and payable to the order of the said Egbert A. Thompson, at six months after the date thereof, at the State Bank at Morris, for value received, without defalcation or discount, and endorsed by said E. A. T. and the said D. S. with the intent to release the said D. S. from his liability on said note, and for which said promissory note, so as aforesaid endorsed by the said D. S., the money had been advanced *and paid by the said bank;* and which promissory note was then, to wit, on the day and year last aforesaid, the property, promissory note, and effects of the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown. By means whereof the said D. S. was released from his liability to the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, as endorser on the said promissory note; and thereby, then and there, by the means last aforesaid, the said L. N., W. T., J. M. K., J. C., S. S. D., and D. S. did greatly impoverish and injure the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, to the great damage of the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, against the peace of this state, the government and dignity of the same.

The second count presented that, in further pursuance of, and according to the said conspiracy, combination, confederacy, and agreement among them, the said L. N., W. T., J. M. K., J. C., S. S. D., and D. S., had as aforesaid, they, the said L. N., &c., afterwards, to wit, in, &c., at, &c., and within, &c., fraudulently, maliciously, and unlawfully suffered, caused, and procured the name of the said David Sanderson to be stricken off and erased from a certain other promissory note, made by

one Egbert A. Thompson (by the name and description of E. A. Thompson), for the sum of six thousand one hundred and eighty-three dollars, dated Morristown, September 4, 1849, and payable, six months after the date thereof to the said David Sanderson, by the name and description of D. Sanderson, at the State Bank at Morris, for value received, without defalcation or discount, and endorsed by the said David Sanderson, with the intent to release said David Sanderson from his liability as endorser on said note, &c. The residue as the first count.

The third count charged that the defendants, by certain undue, indirect, and unlawful means in that behalf, fraudulently, maliciously, and unlawfully did cheat and defraud the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, of their moneys, goods, chattels, promissory notes, and effects, that is to say, $1000 in money, $16,000 in the promissory notes of one E. A. T., endorsed by the said D. S., one for the sum of $10,057.68 and the other for the sum of $6183, of the value of $16,000, the promissory note of one D. M., jun., for $200, and, by the means last aforesaid, did greatly impoverish and injure the said "the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, against the form of the statute, &c.

The fourth count was the same as the first, except that it averred that the defendants were directors of the State Bank at Morris, and that the object and effect of the conspiracy was to cheat that bank, omitting the words "and divers other persons to the jurors unknown."

The fifth count charged that, in further pursuance of, and according to the said last mentioned conspiracy, combination, confederacy, and agreement among them, the said defendants, directors of the said "the President, Directors, and Company of the State Bank at Morris," as aforesaid, they being said directors as aforesaid, afterwards, to wit, on the same day and year last aforesaid, at, &c., within, &c., fraudulently, maliciously, and unlawfully suffered, caused, and procured the

name of the said D. S. to be stricken off and erased from a certain other promissory note, made by one E. A. T., for the sum of, &c., dated, &c., and payable, six months from date, to the order of said D. S., at, &c., and endorsed by the said D. S., which said promissory note, so as aforesaid endorsed by the said D. S., was then the property, promissory note, and effects of the said "the President, Directors, and Company of the State Bank at Morris," with the intent thereby to release and discharge the said D. S. from all liability to the said "the President," &c., by reason of the said endorsement as aforesaid, they, the said W. T., &c. well knowing the said E. A. T., the maker of the said promissory note, to be insolvent, worthless, and of no responsibility, to the great damage of the said "the President," &c., against the form of the statute, &c.

The sixth count was the same as the third, except that it averred that the defendants were directors of the State Bank at Morris ; and, in the charges of cheating and design to cheat, it omitted the words " and divers other persons to the jurors unknown."

The seventh count charged that the defendants unlawfully, falsely, fraudulently, and deceitfully did conspire, combine, confederate, and agree together, by divers false pretences and indirect means, to cheat and defraud " the President, Directors, and Company of the State Bank at Morris," and divers other persons to the jurors aforesaid unknown, of their moneys, to the great damage, fraud, and deceit of the said "the President, Directors, and Company of the State Bank at Morris," and the said divers other persons to the jurors aforesaid unknown, to the evil example, &c., contrary to the force of the statute, &c.

The eighth count was the same as the seventh, omitting the words " divers other persons to the jurors aforesaid unknown."

The ninth count charged the defendants with conspiring " to embezzle and convert to their own use," and the tenth, with conspiring " to convert to their own use " the moneys, &c., of the bank, neither count charging any act done under conspiracy.

It appeared, by a copy of the panel brought up with the papers, that the name of one of the grand jurors therein was Henry Hilliard, which in the caption was Henry Hillard.

On the part of the defendants, a motion was made to quash the indictment, which was argued before the CHIEF JUSTICE and Justices RANDOLPH and OGDEN.

*Elmer*, Attorney General, for the state; *F. T. Frelinghuysen, A. C. M. Pennington,* and *J. W. Scott,* for the defendants.

Counsel for defendants contended that the indictment ought to be quashed—

I. Because the indictment was presented by a grand juror, who was not summoned as such by the sheriff; the name in the caption was *Hillard,* in the sheriff's panel it was *Hilliard. Rev. Stat.* 21, § 6 ; 1 *South.* 563, *Nichols* v. *The State.*

II. Because the indictment, and every count in it, is drawn in an inaccurate and inartistic manner; presentment is stated on *" oaths "* of grand jurors, when they take but one *" oath."* It is stated that intent was to defraud the *" bank,"* a term that has no definite legal meaning, and the liability of Sanderson is no where named or shown.

III. The second, third, fifth, and sixth counts contain no charge of conspiracy in themselves, they refer to the other counts *"* conspiring as aforesaid."

IV. The third, sixth, seventh, eighth, ninth, and tenth counts state no overt act done in execution of conspiracy.

V. The first, second, fourth, and sixth counts charge overt acts, but these acts are not the means to effect the conspiracy, and do not constitute a crime. *Rev. Stat.* 275, § 61.

VI. The 61st section of the crimes act defines what will constitute conspiracy, and abolishes, by this definition, the common law crime.   9 *Cow.* 578, *Lambert* v. *The People ;* 4 *Halst.* 293, *The State* v. *Rickey ;* 12 *Mass.* 545, *Bartlett* v. *King ;* 5 *Pick.* 168, *Nicholls* v. *Squire ;* 17 *Pick.* 80, *Jennings* v. *Commonwealth ;* 10 *Pick.* 37, *Commonwealth* v. *Cooly ; Vin. Abr. tit. Stat.* § 63.

The *Attorney General,* for the state, contended—

I. That the name Hillard and Hilliard were the same—*idem sonans.*

II. That the words "said bank" plainly alluded to the corporation before technically named.

III. That the only real question was, whether the common law offence was abolished by the statute. It was not, because there were no negative words, and no such implication could be derived where there was no repugnance.

The case of *Lambert* v. *The People,* 9 *Cow.* 578 cited, was decided on the express words of the New York statute abolishing the common law offence. 3 *Chit. Cr. L.* 1139; *Whart. Cr. L.* 487–8–9; 5 *Harr. & John.* 317, 352; 3 *Harr.* 108.

The CHIEF JUSTICE delivered the opinion of the court.

The first count of the indictment, stript of its technical phraseology, charges that the defendants, with intent to defraud "the President, Directors, and Company of the State Bank at Morris," and other persons to the jurors unknown, fraudulently and maliciously conspired, combined, and confederated among themselves, by unlawful practices, to cheat and defraud the said company, and other persons to the jurors unknown; and that, in pursuance of the said conspiracy, they fraudulently, maliciously, and unlawfully caused the name of David Sanderson to be erased from a promissory note, the property of the said bank and other persons unknown, by means whereof Sanderson was released from his liability upon the said note. The fourth count is similar, except that it contains the additional allegation, that the defendants were directors of the said bank.

The substance of the charge is, that the defendants conspired to defraud the bank and others, and with that intent, and in execution of their design, they fraudulently and unlawfully erased the name of David Sanderson from a promissory note, and thereby discharged him from his liability thereon.

By the law of the state, the destruction, in any way whatever, of the endorsement or assignment of any bill of exchange or promissory note for the payment of money, with intent to

defraud any person or persons, body politic or corporate, is a misdemeanor punishable by fine and imprisonment.   *Rev. Stat.* 277, § 69.

The indictment then charges a conspiracy to cheat and defraud persons of their property by means in themselves criminal, and falls directly within one of the classes of conspiracy specified in the statute.   *Rev. Stat.* 275, § 61.

The offence charged in this indictment undoubtedly constitutes an indictable misdemeanor, within the express provision of the statute of this state against conspiracy.   This view of the case relieves the indictment from the substantial objections urged against it upon the argument, and renders the expression of any opinion upon those points unnecessary.

Inasmuch, however, as the argument at bar proceeded mainly on the assumption that the offence charged was not within the statute, an opinion upon the principal points discussed may not be irrelevant.   It was insisted, on the part of the defendants, that the offence of conspiracy, as it existed at the common law, is abrogated by the statute of New Jersey; and, if the common law offence of conspiracy still exists, it was further insisted, that the facts charged in the indictment constitute no offence at the common law.   The argument proceeds upon the assumption that the act conspired to be done was not in itself criminal.

The existing law relative to the crime of conspiracy was first enacted by the act of the 17th February, 1829, (*Pamph. Laws* 147, § 5,) and by the revision of 1846, is made a part of the act for the punishment of crimes.   *Rev. Stat.* 275, § 61. The act enumerates various particulars in which the crime of conspiracy may consist, and prescribes the punishment for the offence thus constituted.   It contains, however, no negative or exclusive words.   It neither in terms abolishes the common law offence, nor does it declare that the cases enumerated shall alone constitute the offence.   When the common law and a statute differ, the common law gives place to the statute, only where the latter is couched in negative terms, or where its matter is so clearly repugnant that it necessarily implies a negative.  (1 *Black. Com.* 89.)   It is a rule of exposition that sta-

tutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced, for if the parliament had had that design, it is naturally said they would have expressed it. *Dwarris on Stat.* 695.

The argument applies with peculiar force to the statute now under consideration. The provisions of the law of New Jersey on the subject of conspiracy are identical with those of the New York statute, and have been copied, almost literally, from the eighth section of that act. (2 *Rev. Stat. N. Y.* 691, § 8.) The ninth section of the New York statute abolishes, in express terms, all other conspiracies, declaring that "no conspiracies, other than such as are enumerated in the last section, are punishable criminally." The omission of this clause by our own legislature, when adopting the other provisions of the New York statute, is certainly not without significancy. The learned revisors of the New York statute introduced the ninth section of their act to the legislature with this remark, that it was necessary to put at rest the doubts and difficulties respecting the common law offences," showing clearly that, in their judgment, the statute, independent of the ninth section, would not have abolished the common law offence. 9 *Cowen* 625, *note.*

It is conceded that where a statute has varied the whole subject of the common law in regard to a particular crime, and has changed the character of the offence, or the nature or degree of punishment, that the statute must be regarded as a virtual repeal of the common law, because such must be presumed to have been the intention of the legislature. But unless such intent is *manifest,* the repeal by implication cannot be inferred. (*Jennings* v. *Commonwealth,* 17 *Pick.* 82.) But the statute in this case does not purport to revise the whole common law in relation to conspiracies, nor to provide for every case, or every class of cases, which at the common law

constituted the crime. The revisors of the New York statute, in their draft of the law as reported, included another subdivision, not adopted by the legislature, to wit, a conspiracy " to defraud or injure any person in his trade or business." And, in their report, they state that the enumeration in the statute " includes all the cases usually considered as conspiracies, except that of a conspiracy to injure an individual by means not in themselves criminal." Indeed the very argument of the defendants' counsel proceeds upon the ground that there are cases of conspiracy at the common law, not enumerated in the statute, and which it is insisted are abrogated by operation of the statute.

The statute 33 *Edward I.*, (1 *Stat. at Large* 149) which purports to contain a definition of conspiracy, has never been understood to abolish, or even to limit the offence of conspiracy, as it existed at common law. *Hawk P. C.* 189, *Book I.*, 72, § 2.

Nor has it ever been contended that our own statute of 1796, (*Paterson* 218, § 53,) which limits the offence of conspiracy to a single class of cases, *viz.* to that of " falsely and maliciously indicting, or procuring to be indicted, any person or persons," abolished all common law conspiracies. Neither of the judges who delivered opinions in the case of the *State* v. *Rickey* entertained such an opinion, nor was it ever so pretended by counsel upon the argument. 4 *Halst.* 310.

It is difficult to perceive any reason why the existing statute of this state should be deemed to abolish all conspiracies not enumerated by the act, which does not apply with equal force to the act of 1796. The inference derived from the last clause of the 61st section of the existing law was relied upon as distinguishing the operation of the two statutes; but that in itself cannot be deemed of sufficient force to raise the implication of an intentional repeal of an existing law. There is nothing upon the face of the statute which either directly, or by necessary or any fair implication, abrogates the common law crime of conspiracy. Adopting the principle of construction, that the common law is no further altered by the statute than is plainly expressed in, or necessarily implied by the act, and that if the

legislature had designed a further alteration, they would have expressed it, we are of opinion that the common law offence of conspiracy still exists in this state. And this court, whatever may be its views of policy or expediency, cannot treat the offence as abrogated without assuming to itself the power of abolishing a part of the penal code which is recognized and sustained by express constitutional provision.

The question, whether a conspiracy to commit a private injury, which is not in itself a public offence, can constitute the offence of conspiracy at the common law, was not fully discussed upon the argument, nor is it deemed necessary now to review at length the authorities upon this point. The question has undergone repeated and able discussion, and is, perhaps, not yet entirely at rest. In this state, the point has never been decided. In the case of *The State* v. *Rickey*, 4 *Halst.* 309, Justice Ford, in delivering his opinion, does indeed say, that " it may be laid down as a settled rule, that an indictment will not lie for a conspiracy to commit a *civil injury* of any description that is not in itself a public offence." But that was not the opinion of the court. Justice Drake based his opinion entirely upon the defective frame of the indictment, and intimates clearly that he does not concur in the view of Justice Ford upon the point in question. The same view appears to have been adopted by Jones, chancellor, in delivering his opinion in the case of *Lambert* v. *The People*, 9 *Cowen* 597. In the same case the question is treated as an open one, and involved in great difficulty, by Spencer, senator. I am aware of no adjudicated case which recognizes the broad doctrine adopted by Justice Ford, though it is conceded that all conspiracies to produce private injury are not indictable offences.

Lord Coke, it is true, confines the offence of conspiracy to the single case of getting a person indicted by malice and false evidence, and makes the lawful acquittal of the party aggrieved essential to the completion of the offence. (3 *Inst.* 143). Hawkins questions the accuracy of Coke's definition, and adopts the language of the statute 33 *Edw. I.* as the better definition of the offence. He adds—" It seems certain that a man may not only be condemned to the pillory, but also to be

branded for a false and malicious accusation; but since it doth not appear to have been solemnly resolved that such an offender is indictable upon the statute, it seems to be more safe and advisable to ground an indictment of this kind upon the common law than upon the statute, since there can be no doubt that all confederacies whatever wrongfully to prejudice a third person are highly criminal at common law, as where divers persons confederate together by indirect means to impoverish a third person, or falsely and maliciously to charge a man with being the reputed father of a bastard child, or to maintain one another in any matter, whether it be true or false. 2 *Hawk. P. C., Book II.,* c. 72, § 1, 2.

The great weight of authority, the adjudged cases, no less than the most approved elementary writers, sustain the position, that a conspiracy to defraud individuals or a corporation of their property may in itself constitute an indictable offence, though the act done, or proposed to be done, in pursuance of the conspiracy, be not in itself indictable. *Rex* v. *Cope,* 1 *Strange* 144; *Rex* v. *Mawlery,* 6 *T. R.* 619; *Rex* v. *Best,* 6 *Modern* 185; *The King* v. *De Berenger,* 3 *Maule & Sel.* 67; *Rex* v. *Roberts,* 1 *Camp.* 399; *Reg.* v. *Best,* 2 *Ld. Raymond* 1167; *Commonwealth* v. *Judd,* 2 *Mass.* 329; *The State* v. *Buchanan,* 5 *Har. & John.* 317; 3 *Chit. Cr. Law* 1138; *Arch. Cr. Law* 390; 2 *Russell on Cr.* 553; *Dougherty's Cr. Cir.* 118, 129, 134, 140; *Stubbs' Cr. Cir.* 237, 243, 245, 249, 252; *Wharton's Cr. Law* 486.

A combination (says Justice Gibson) is a conspiracy in law, whenever the act to be done has a necessary tendency to prejudice the public or oppress individuals by unjustly subjecting them to the power of the confederates, and giving effect to the purposes of the latter, whether of extortion or mischief. *Wharton's Cr. Law* 487.

In the case of *The State* v. *Buchanan and others* (5 *Har. & John.* 317) the indictment charged the defendants, being the president and cashier of the office of discount and deposit of the Bank of the United States at Baltimore, and of the directors of said bank, with a conspiracy to defraud the bank, and, by dishonest practices, to embezzle a large amount of

money belonging to the bank, in order to have the use thereof for two months, without paying interest and without security for the repayment. One count of the indictment sets forth the means by which the fraud was to be perpetrated, the other does not. After the most elaborate argument by the ablest counsel, and upon a full review of all the authorities, both counts of the indictment were sustained as good counts for conspiracy at the common law. This case expressly adjudges that, to constitute an indictable conspiracy at common law, it is not necessary that the act conspired to be done should, if effected by an individual, be such as would *per se* amount to an indictable offence. It is worthy of notice that this case, though some years prior to the case of *The State* v. *Rickey* does not appear to have been adverted to in the decision of the latter cause.

The more recent case of *Lambert* v. *The People* (9 *Cowen* 578) cannot be regarded as an authority against the main principle ruled in the case of *The State* v. *Buchanan*. In the former case, the indictment (which had been held valid by the unanimous judgment of the Supreme Court) was adjudged defective in the Court of Appeals by the casting vote of the president, the other members of the court being equally divided in opinion. But the decision of the Court of Appeals did not rest upon the ground that the offence charged was not indictable, but that the frame of the indictment was defective in not specifying the means by which the conspiracy was to be effected. The senator by whom the leading opinion was pronounced placed his opinion upon that ground.

But admitting the question to be unsettled, whether a conspiracy to defraud a private individual by means not in themselves criminal, be an offence at the common law, a conspiracy to defraud an incorporated bank rests upon somewhat different grounds. It appears, upon principle, to come within this class of cases which are held to be indictable on the ground that the act done, though not in itself indictable, is essentially a public injury. Banks of issue, especially, are always supposed to be, and it is presumed uniformly are incorporated rather for the public good than for private or indivi-

dual benefit. They are designed to facilitate trade and commerce and the business operations of society. They furnish a large part of the circulating medium of the country, thereby performing one of the essential offices of government. Their issues enter largely into the business operations of the community in which they are located. A sound redeemable circulating medium is a public benefit, a depreciated currency a public evil. A conspiracy to embezzle the funds of a bank, or to destroy its securities, and thereby or otherwise to impair the credit, or to destroy the value of a portion of the circulating medium of the community, is essentially a public evil, and would seem, upon principle, to rank with that class of conspiracies which are held to be indictable as offences against the public or against trade. The case is strengthened when the offence is committed by the directors or officers of the bank, to whose management its affairs are entrusted. If the directors of an incorporated bank, having complied with the requirements of the law, and furnished the requisite securities to enable them to commence banking operations with safety to society, set afloat an indefinite amount of paper money constituting the circulating medium of the community, and then conspire to embezzle the funds, or cancel the securities of the institution, they thereby defeat the policy of the law; they make void all the checks and guards which the legislature have provided for the public security, and do in effect create a great public evil. It is difficult, indeed, to conceive of any conspiracy which more imperatively requires the interposition of the criminal law or the restraining influence of penal enactments. In the facility with which the offence may be committed; in the difficulty of its detection and exposure; in its disastrous effects upon commercial confidence and the operations of trade and business; in its oppressive operation upon the poor and ignorant, that class of society which are entitled to the special protection of the law against the combination of wealth and the devices of fraud, the offence of embezzling the funds, or otherwise destroying the credit of incorporated banks of issue, seems to stand pre-eminent among that class of

evils which the common law indictment for conspiracy was designed to remedy.

We are of opinion, therefore, that the facts charged in this indictment, even though the act conspired to be done, or the means by which it was to be accomplished be not in themselves criminal, do constitute an indictable offence at the common law.

It remains to inquire whether any of the exceptions taken to the frame of the indictment, or to the manner in which it was presented, be well founded.

1. It is objected that the indictment was not presented by a grand jury duly empannelled, the name of one of the grand jurors returned by the sheriff being Henry *Hilliard*, and the name of the grand juror by whom the indictment was presented, as it appears in the caption, being Henry *Hillard*, omitting the last *i* in the surname. It is by no means clear that the names, as they appear in the panel and in the caption, are not *idem sonans*, (the omission of the letter *i* making no real difference in the sound of the name) and the objection upon this ground not well founded. But, admitting the names to be substantially variant, when there is no pretence that the persons named in the panel and in the caption are really different, but the difficulty consists in the misprision of the clerk in preparing the caption, the court will not permit the indictment upon that ground to be quashed. The caption is amendable. The case falls directly within the decision of the Court of Errors in *The State* v. *Carter*, within the principle recognised by this court in *The State* v. *West*, and within the view of Kirkpatrick, C. J., in *Nicholls* v. *The State*, 2 *South.* 542. , 1 *Chit. Cr. Law* 335.

It is further objected that the indictment is presented upon the *oaths* of the grand jurors, and not upon their *oath*, as it should be. But the term *oaths*, as used in the indictment, does not necessarily imply that more than one oath was administered to each juror. It is neither ungrammatical nor inaccurate to aver that a bill is presented by the oaths of twelve men, although but a single oath was administered to each. It appears, moreover from the caption, that in point of fact the

jurors were duly sworn. There is certainly a want of technical precision in the expression, as well as a deviation from the ordinary form. But the inaccuracy is not fatal to the indictment.

Several other verbal inaccuracies and departures from technical precision were urged as objections to the indictment, of which it is sufficient to say, that neither of them are material, and consequently not fatal.

It is also objected that the indictment does not charge that Sanderson was in fact released, but, on the contrary, discloses such a state of facts as show that he could not have been released. But no principle is better settled than that the completion of the crime does not depend upon the success of the object for which the conspiracy was formed. The crime at common law is complete by the fact of conspiring, and under the statute the offence is consummated by the doing of any overt act in execution of the agreement, and to effect its object.

Several counts of the indictment appear to be defective, by reason of their containing no statement of the means by which the conspiracy was to be accomplished, and no averment of any overt act done in pursuance of the agreement. Other counts appear to be vicious, as merely charging an overt act done in pursuance of a conspiracy set forth in a previous count, without containing within themselves any direct charge of a conspiracy.

It is not, however, the practice of the court to strike vicious counts out of an indictment. If any count of the indictment be valid, the court will neither strike out nor quash, but permit the state to go to trial upon the indictment, as it is presented by the grand jury, without alteration. *Rex* v. *Pewtress*, 2 *Stran.* 1026 ; 1 *Chit. Cr. Law* 303.

The motion to quash must be denied.

RANDOLPH and OGDEN, Justices, concurred.

CITED *in State* v. *Donaldson*, 3 *Vr.* 153–155; *State* v. *Young*, 8 *Vr.* 188.