CUTTER ADS. STATE.

1. The mere taking of an illegal fee by a justice of the peace or other officer of this state, will not constitute a criminal act, under the twenty-eighth section of the act for the punishment of crimes, (*Nix. Dig.* 197,) without regard to the intent of the recipient.
2. The legal maxim, *ignorantia legis neminem excusat,* if enforced, where the law is not settled, or is obscure, and where the guilty inten tion, being a necessary constituent of the particular offence, is dependent on a knowledge of the law, would be misapplied.
3. The defendant, on an indictment for extortion in taking fees to which he was not entitled, has the right to prove to the jury that the moneys which it is charged he took extorsively, were received by him under a mistake as to his legal rights.

Writ of error to the Court of Oyer and Terminer of the county of Hudson.

Argued at November Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and SCUDDER.

For the plaintiff in error, *C. E. Schofield* and *I. W. Scudder.*

For the state, *A. Q. Garretson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The defendant was indicted for extortion in taking fees to which he was not entitled, on a criminal complaint before him as a justice of the peace. The defence which he set up, and which was overruled, was that he had taken these moneys innocently, and under a belief that by force of the statute he had a right to exact them.

This subject is regulated by the twenty-eighth section of the act for the punishment of crimes. *Nix. Dig.* 197.* This clause declares that no justice or other officer of this state shall receive or take any fee or reward, to execute and do his duty and office, but such as is or shall be allowed by the laws

* *Rev., p.* 230, § 23.

of this state, and that "if any justice, &c., shall receive or take, by color of his office, any fee or reward whatsoever, not allowed by the laws of this state, for doing his office, and be thereof convicted, he shall be punished," &c.

On the part of the state it is argued that this statute is explicit in its terms, and makes the mere taking of an illegal fee a criminal act, without regard to the intent of the recipient. Such undoubtedly is the literal force of the language, but then, on the same principle, the officer would be guilty if he took, by mistake or inadvertence, more than the sum coming to him. Nor would the statutory terms, if taken in their exact signification, exclude from their compass, an officer who might be laboring under an insane delusion. Manifestly therefore, the terms of this section are subject to certain practical limitations. This is the case with most statutes couched in comprehensive terms, and especially with those which modify or otherwise regulate common law offences. In such instances the old and the new law are to be construed together; and the former will not be considered to be abolished except so far as the design to produce such effect appears to be clear. In morals it is an evil mind which makes the offence, and this, as a general rule, has been at the root of criminal law. The consequence is that it is not to be intended that this principle is discarded, merely on account of the generality of statutory language. It is highly reasonable to presume that the law makers did not intend to disgrace or to punish a person who should do an act under the belief that it was lawful to do it. And it is this presumption that fully justifies the statement of Mr. Bishop, "that a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act." 1 Crim. Law, § 80.

This doctrine applies with full force to the present case. If the magistrate received the fees in question without any corrupt intent, and under the conviction that they were lawfully his due, I do not think such act was a crime by force of the statute above recited.

But it is further argued on the part of the prosecution, that as the fees to which the justice was entitled are fixed by law, and as he cannot set up, as an excuse for his conduct his ignorance of the law, his guilty knowledge is undeniable. The argument goes upon the legal maxim *ignorantia legis neminem excusat.* But this rule, in its application to the law of crimes, is subject, as it is sometimes in respect to civil rights, to certain important exceptions. Where the act done is *malum in se,* or where the law which has been infringed was settled and plain, the maxim, in its rigor, will be applied; but where the law is not settled, or is obscure, and where the guilty intention, being a necessary constituent of the particular offence, is dependent on a knowledge of the law, this rule, if enforced, would be misapplied. To give it any force in such instances, would be to turn it aside from its rational and original purpose, and to convert it into an instrument of injustice. The judgments of the courts have confined it to its proper sphere. Whenever a special mental condition constitutes a part of the offence charged, and such condition depends on the question whether or not the culprit had certain knowledge with respect to matters of law, in every such case it has been declared that the subject of the existence of such knowledge is open to inquiry, as a fact to be found by the jury. This doctrine has often been applied to the offence of larceny. The criminal intent, which is an essential part of that crime, involves a knowledge that the property taken belongs to another; but even when all the facts are known to the accused, and so the right to the property is a mere question of law, still he will make good his defence if he can show, in a satisfactory manner, that being under a misapprehension as to his legal rights, he honestly believed the articles in question to be his own. *Rex* v. *Hall,* 3 *Carr. & P.* 409; *Reg.* v. *Reed, Car. & Marsh.* 306.

The adjudications show many other applications of the same principle, and the facts of some of such cases were not substantially dissimilar from those embraced in the present inquiry. In the case of *The People* v. *Whaley,* 6 *Cow.* 661,

a justice of the peace had been indicted for taking illegal fees, and the court held that the motives of the defendant, whether they showed corruption or that he acted through a mistake of the law, were a proper question for the jury. The case in *The Commonwealth* v. *Shed*, 1 *Mass*. 228, was put before the jury on the same ground. This was likewise the ground of decision in the case of *The Commonwealth* v. *Bradford*, 9 *Metc*. 268, the charge being for illegal voting, and it being declared that evidence that the defendant had consulted counsel as to his right of suffrage, and had acted on the advice thus obtained, was admissible in his favor. This evidence was only important to show that the defendant in infringing the statute had done so in ignorance of the rule of law upon the subject. Many other cases, resting on the same basis, might be cited ; but the foregoing are sufficient to mark clearly the boundaries delineated by the courts to the general rule, that ignorance of law is no defence where the mandates of a statute have been disregarded or a crime has been perpetrated.

That the present case falls within the exceptions to this general rule, appears to me to be plain. There can be no doubt that an opinion very generally prevailed that magistrates had the right to exact the fees which were received by this defendant, and that they could be legally taken under similar circumstances. The prevalence of such an opinion could not, it is true, legalize the act of taking such fees ; but its existence might tend to show that the defendant, when he did the act with which he stands charged, was not conscious of doing anything wrong. If a justice of the peace, being called upon to construe a statute with respect to the fees coming to himself, should, exercising due care, form an honest judgment as to his dues, and should act upon such judgment, it would seem palpably unjust, and therefore inconsistent with the ordinary grounds of judicial action, to hold such conduct criminal if it should happen that a higher tribunal should dissent from the view thus taken, and should decide that the statute was not susceptible of the interpreta-

tion put upon it. I think the defendant had the right in this case to prove to the jury that the moneys, which it is charged he took extorsively, were received by him under a mistake as to his legal rights, and that as such evidence being offered by him was overruled, the judgment on that account must be reversed.

CITED in *State* v. *Halsted*, 10 *Vr.* 402; *Halsted* v. *State*, 12 *Vr.* 552.