128 N.J. Super. 329 (1974)
320 A.2d 164
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD SAVOIE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1974.
Decided May 10, 1974.
*330 Before Judges KOLOVSKY, FRITZ and CRANE.
*331 Mr. Robert A. Coogan argued the cause for appellant (Messrs. Saling, Moore, O'Mara & Coogan, attorneys; Mr. Daniel M. Waldman, on the brief).
Mr. Peter S. Hamerslag, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey, and Mr. Jared L. McDavit, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by CRANE, J.A.D.
Defendant, the building inspector of the Township of Marlboro, appeals from the judgment of conviction entered on a jury verdict finding him guilty of a violation of N.J.S.A. 2A:105-1  this State's "extortion statute," State v. Begyn, 34 N.J. 35, 46 (1961)  for accepting a "Christmas gift" of money (the evidence is in dispute as to whether it was $250 or $150) from U.S. Home Corporation (U.S. Home) or its officers. The sentence imposed was a fine of $750, to be paid within one month.
The indictment on which defendant was brought to trial contained two counts. The first count charged him with the common law crime (N.J.S.A. 2A:85-1) of misconduct in office, alleging that in or about December 1970,
* * * [defendant] did willfully, knowingly and corruptly engage in misconduct in his said public office, that is, the said EDWARD SAVOIE did breach and violate the aforesaid duties by receiving and taking a sum of money, that is between one hundred fifty dollars and two hundred fifty dollars ($150.00-$250.00) from U.S. Home Corporation, * * * in connection with the inspection by the said EDWARD SAVOIE of homes being constructed in the Township of Marlboro aforesaid, by the U.S. Home Corporation aforesaid, * * *.
The second count charged a violation of N.J.S.A. 2A:105-1, alleging that in or about December 1970,
* * * [defendant] by color of his said office [as building inspector], knowingly, willfully, and corruptly did receive and take from U.S. *332 Home Corporation, * * * a sum of money, that is between one hundred fifty dollars and two hundred fifty dollars ($150.00-$250.00), the said sum being a fee and reward not allowed by law to the said EDWARD SAVOIE for performing his duties as the public officer aforesaid, * * *.
The incidents which culminated in the indictment started in December 1970 with the preparation by officers of U.S. Home, then engaged in extensive building operations in several municipalities of this State, including the Township of Marlboro, of a list of persons to whom, and establishments to which, Christmas gifts were to be made.
Although the list was not marked into evidence at defendant's trial, defendant's proffer thereof being rejected by the trial judge, it is part of the record before us because it was before the trial court which denied defendant's pretrial motion to dismiss the indictment on the ground that the State had allegedly unconstitutionally engaged in discriminatory selective prosecution of defendant. Cf. State v. Boncelet, 107 N.J. Super. 444 (App. Div. 1959). Defendant argues, among other things, that the denial of that motion was erroneous.
The list, headed "1970 Xmas," listed a number of officials and employees and offices in seven municipalities, three employees of a bank, two employees of a gas company, three State Police barracks and various other persons who apparently were employees of U.S. Home or its affiliated companies. In some instances the gifts listed were "baskets," in others they were quantities of liquor, and in still others they were sums of money. In the last-mentioned category 3 persons were to be given $25,18 were to given $50 and 6 were to be given $100. Only in two cases was there to be a gift of money in a greater amount. Defendant Savoie, "building inspector," was to receive $250 and the tax assessor of Marlboro was to receive a "basket" and $500.
The grand jury indicted only Savoie and the Marlboro tax assessor. (We were informed at oral argument that trial *333 of the indictment against the tax assessor resulted in an acquittal.)
At the trial of defendant Savoie the State's proofs consisted of the testimony of the township's mayor who merely described the offices held by defendant and the duties thereof; that of a Mr. Lambusta and a Mr. Frank, respectively an employee and vice-president in charge of operations of U.S. Home, and that of two state troopers who had interviewed defendant on July 17, 1972.
Lambusta testified that "quite close to Christmas" in December 1970, at the U.S. Home Office, he had been given the list and "a certain amount of money * * * to take care of those on the list." The list had been prepared by officers of U.S. Home after recommendations had been made by superintendents of the company's several projects. He put $250 in cash in an envelope on which he wrote defendant Savoie's name and sealed the envelope. Other envelopes for other recipients were similarly prepared and all were put in piles "for the super to pick it up so he could distribute it for his job." Thereafter the envelope destined for defendant was picked up by another employee of U.S. Home. The witness was not certain whether that employee was a Mr. Mattise or a Mr. Frank.
Frank testified that in December 1970 he obtained from Lambusta the sealed envelope with defendant's name on it; that on a day which could have been "anywhere from a week to a day" before Christmas, as he "was about to deliver [the envelope] to the construction man, [he] happened to run into Mr. Savoie" and gave the envelope to him, indicating to him that "it was a Christmas gift" and wishing him "our Holiday Greetings." Nothing more was said. On cross-examination, Frank testified that the envelope had not been solicited by Savoie; the "gift [was not] in anywise intended to influence [defendant] in the performance of his public duties"; and he, Frank, had always found Savoie to be a "stringent, forthright and honest individual."
*334 The next witness called by the State was Trooper Hallock. On July 17, 1972 he and Sergeant Feldherr had gone to defendant's office in the town hall. They introduced themselves and told defendant that they were investigating his receiving $250 from U.S. Home "around Christmas of 1970." Defendant, after being given the Miranda warnings, expressed a willingness to, and did, answer all the trooper's questions. Although there was no support therefor in the trooper's written report, his testimony and that of Sergeant Feldherr indicated that their "impression" was that at first defendant denied having received any money. According to Feldherr, that "impression" stemmed from the fact that defendant expressed surprise and "appeared to be unaware of what we were talking about momentarily." In any event, defendant speedily acknowledged that he had received "some money," and that while he "wasn't sure of the amount," it "could have been approximately $150."
According to Hallock, defendant "stated that he did not feel it was wrong to take this money * * * that it was a Christmas gift * * * given to him to buy some liquor with"; that he, defendant, "did nothing special for U.S. Home and the gift was in appreciation for good service"; the "good service was not holding U.S. Home up on their building inspections."
After offering the testimony of Sergeant Feldherr, which added nothing of substance to that given by Trooper Hallock, the State rested.
Defendant then moved for judgment of acquittal. The judge granted the motion as to the first count charging misconduct in office, ruling that an "evil" or "criminal" intent was an essential element to be proved by the State "as far as the misconduct [in office charge] [was] concerned," and that the State had not offered any proof evidencing such evil intent "in some fashion" either by way of malfeasance, misfeasance or nonfeasance, so that the "misconduct in office [charge was] not supported by the proofs."
*335 However, the judge denied defendant's motion for acquittal on the second count, ruling that "criminal intent is not an essential element of the statutory crime" of extortion proscribed by N.J.S.A. 2A:105-1.
The trial judge adhered to his determination that criminal intent was not an element of the crime in denying defendant's renewed motion for acquittal after he and three character witnesses had testified,[1] in its rulings on defendant's requests to charge and in the charge given to the jury. The judge refused defendant's request that the jury be told that "unless you find beyond a reasonable doubt that defendant committed the unlawful acts which are charged wilfully and knowingly, there must be a verdict of not guilty," and refused to define "wilfully" and "knowingly" for the jury. Further, he ruled that the indictment would not go to the jury so that it would not see "the adverbs knowingly, wilfully and corruptly" set forth in the second count of the indictment  words which, the judge said, he would not charge because of his opinion that the criminal intent was not an element of the crime.
Defendant first contends that the trial judge committed prejudicial error in refusing to charge that in order to find defendant guilty of extortion they had to find that he made a demand for an illegal fee, present or reward. The request *336 to charge was predicated upon language found in State v. Seaman, 114 N.J. Super. 19, 31 (App. Div. 1971), certif. den. 58 N.J. 594 (1971), cert. den. 404 U.S. 1015, 92 S.Ct. 674, 30 L.Ed.2d 662 (1972), where the common law offense of misconduct in office was distinguished from the statutory offense of extortion. We are satisfied that in this context, i.e., an effort to demonstrate that both offeror and receiver were susceptible to bribery charges while only the receiver could be found guilty of extortion, the suggestion there made that a demand is necessary to extortion is an improvident overstatement. As indicated by the next sentence in the opinion after the italicized word "demanding" (114 N.J. at 31), the word "accepting" instead of "demanding" would have more aptly stated the law. Moreover, the reference to a demand in describing extortion was not made in connection with an issue necessary to the decision of that case; hence we do not regard it as controlling precedent. Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 332 (1949). No mention of a demand is made in the statute, N.J.S.A. 2A:105-1, nor was it included among the essential elements set forth in State v. Begyn, 34 N.J. 35, 46 (1961), where the crime of statutory extortion was stated to be "the receiving or taking by any public officer, by color of his office, of any fee or reward not allowed by law for performing his duties."
It has also been established that an oppressive or coercive use of the powers of office amounting to an exaction need not be proved. State v. Matule, 54 N.J. Super. 326, 331 (App. Div. 1959). Accordingly we have no hesitancy in holding that proof of a demand is not a necessary element of the crime of statutory extortion under N.J.S.A. 2A:105-1 and that acceptance of money as a tip or gratuity without making a demand is no defense. Commonwealth v. Hopkins, 165 Pa. Super. 561, 69 A.2d 428 (Superior Ct. 1949); Perkins on Criminal Law, p. 370 (2nd Ed. 1969).
Defendant next contends that the court erred in denying his pretrial motion to dismiss the indictment on the ground that the State "engaged in discriminatory selective *337 prosecution." We find the argument to be without merit. The proofs offered showed that among the recipients of Christmas gratuities, prosecutions were initiated only against the two officials who received gifts in excess of $100. This did not satisfy the requirement of showing that the selection was deliberately based on some unjustifiable standard; selectivity in enforcement by itself, absent a showing of invidious and arbitrary classification, does not constitute a violation of constitutional equal protection rights. Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); State v. Boncelet, 107 N.J. Super. 444, 453 (App. Div. 1969); Annotation, "Penal Law  Discriminatory Enforcement," 4 A.L.R. 3d 404 (1965).
Defendant's final point, and one on which we unfortunately do not agree, is that the trial court erred in refusing to charge that criminal intent to commit the crime of extortion must be proved beyond a reasonable doubt. There have been holdings that the statute proscribing extortion is iterative of the common law and therefore the common law concept of mens rea, criminal intent or corrupt motive, must be read into the statute. Cutter ads. State, 36 N.J.L. 125 (Sup. Ct. 1873); Loftus v. State, 52 N.J.L. 223 (E. & A. 1889  opinion reported only in 19 A. 183). Those cases dealt with justices of the peace who were indicted for taking fees to which they were not entitled. Apparently in that era justices of the peace were compensated by means of fees paid to them by litigants. The cases hold that it would be a valid defense to show that the fees were received under an honest mistake as to whether the justice of the peace was entitled to the fee since, indeed, in some instances a complex legal analysis may have been required to determine the precise fee to which the justice of the peace was entitled. Those cases, we think, are not controlling in the instant situation where defendant was a full-time building inspector compensated by salary alone and not by fees received from persons doing business with his office. Of particular significance is the distinguishing *338 fact that defendant knew full well that he was not entitled to receive fees at all.
The real thrust of defendant's position is set forth in the request to charge submitted in his behalf. The trial court was asked to charge the jury that
A defendant who actually does violate the law would not be guilty of the criminal offense alleged unless he is either conscious of the fact that what he is doing constitutes a violation of the law, or unless he wholly disregards the law and pursues a course without making any reasonable effort to determine whether the plan he is following would constitute a violation of the law or not.
We are aware of no principle of law which would require proof of consciousness of culpability under the facts of this case. Belief that an act is lawful does not generally exempt the actor from criminal responsibility. Morss v. Forbes, 24 N.J. 341, 359 (1957); State v. Hanly, 127 N.J. Super. 436 (App. Div., decided April 1, 1974), and it has consistently been held for many years that the Legislature has the power to declare the doing of an act unlawful regardless of the knowledge of the actor that the act proscribed is unlawful. Halsted v. State, 41 N.J.L. 552, 589 (E. & A. 1879); State v. Labato, 7 N.J. 137, 149 (1951). The most recent pronouncement of our Supreme Court on the subject is contained in State v. Hatch, 64 N.J. 179, 184-185 (1973). There it was held that lack of knowledge that the manner in which a gun was transported violated the New Jersey gun control law, N.J.S.A. 2A:151-42(c), was not a defense.
To the extent that intent is or may be a necessary element in a statutory extortion prosecution, the necessary intent may be spelled out from receipt of the money, a fact which defendant readily admitted on both direct and cross-examination. In State v. Begyn, supra, 34 N.J. at 47, it was said that "The proof of receipt of a knowingly unlawful payment in connection with his duties is enough and furnishes the necessary criminal intent." We do not construe this language as requiring that the State prove that a defendant knew receipt *339 of money was unlawful; that was not an issue in Begyn. That this is so is demonstrated by the language immediately preceding that quoted above:
* * * it is clear that a violation of our statute occurs whenever an officer, by color of his office, receives a reward to which he is not legally entitled by reason of or in connection with his official duties.
We are not dealing here with unknowing possession of contraband articles or a lack of knowledge of the nature of the thing possessed, in which case it might be said to be against public policy and an abuse of police power to ascribe criminal penalties. Cf. State v. Labato, supra, 7 N.J. at 150; State v. Hudson Cty. News Co., 35 N.J. 284 (1961). Nor, in view of defendant's admission of receipt of the money, are we dealing with the issue of knowledge of the fact of possession. In the absence of clear statutory language, we find no logical reason to interpret the statute as requiring a subjective test of consciousness of guilt as is urged by defendant's argument. A defendant's subjective belief in the lawful character of his conduct might be relevant in some circumstances. The possible utility of such a test in bigamy prosecutions was considered but left unresolved in State v. DeMco, 20 N.J. 1, 14 (1955). But judicial solicitude for personal beliefs and attitudes has not generally been extended to public officials in regard to the performance of their official duties; as contrasted to ordinary citizens, they are held to high ethical standards. In Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-475 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652, reh. den. 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952), it was observed that public officers stand in a fiduciary relation to the people; they have an obligation to display good faith, honesty and integrity; they must be impervious to corrupting influences and must transact their business frankly and openly in the light of public scrutiny. Adherence to such high standards is inconsistent with a conscientious belief that the acceptance of a substantial sum as a gratuity is lawfully permitted. *340 We hold, therefore, that such a belief, under the circumstances of this case, is not a valid defense and that the trial court did not err in refusing defendant's request to charge.
We have also examined and considered defendant's arguments relating to the trial judge's refusal to charge in general terms on the subject of criminal intent and find them to be without merit.
The judgment of conviction is affirmed.
FRITZ, J.A.D. (concurring in the result).
In general agreement on all issues except one, we go our separate ways with respect to defendant's claim of error in the failure of the trial judge to charge the necessity for criminal intent  a mens rea  before there can be a conviction of the crime of extortion. We strain at a gnat and swallow a camel in our effort to analyze precedent toward an avowed end of saying yes or no where we are asked if criminal intent is a necessary element of that crime.
Without conceding the viability of the century-old case of Cutter v. State, 36 N.J.L. 125 (Sup. Ct. 1873) (unmentioned in an opinion by our then Chief Justice in State v. Barts, 132 N.J.L. 74 (Sup. Ct. 1944), aff'd o.b. 132 N.J.L. 420 (E. & A. 1945), which opinion was said in State v. Begyn, 34 N.J. 35, 46 (1961), to have enlarged the construction of the statute from the ancient "originally intended" reiteration of the common law to "its present day scope"), I conceive the problem rightly to be not whether criminal intent must be shown, but rather what the nature of the intent must be before the statute is offended. Such an approach enables a harmonization of the old and the new (including, in addition to the cases previously cited, State v. Weleck, 10 N.J. 355 (1952) and State v. Matule, 54 N.J. Super. 326 (App. Div. 1959) certif. den. 29 N.J. 583 (1959)), and more importantly, permits the judicial function to shine as brilliantly in the present days of grievously pervasive official misfeasance as it did in the days of the too often infamous justices of the peace. A search of this magnitude is, I submit, *341 not only easier on the wind and more rewarding, but more likely to do justice in a sense compatible with both legality and morality.
I am convinced this is the thrust of Begyn, supra, in its statement (at 34 N.J. p. 47) that "The proof of receipt of knowingly unlawful payment in connection with his duties is enough and furnishes the necessary criminal intent." This concise, elucidative and articulate statement at once rejects the necessity for a demonstration of the guilty mind in the traditional style of dark-alley slinking with furtive over-the-shoulder glances. It tells us as well that all the intent necessary is present upon receipt of a payment, provided only that the official knows the payment to be unlawful. As against an anticipated suggestion that this puts us back where we were when we started, I am satisfied that the phrase "knowingly unlawful payment," read in context with the earlier statement in Begyn, proscribing receipt of "a reward to which [the official] is not legally entitled by reason of or in connection with his official duties" (34 N.J. at 47), means simply a payment which the official knew was not among the prescribed emoluments of his office. In addition to other virtues, such a test has a precise objectivity.
While I consider this the sense of Begyn, and therefore am bound to it irrespective of my own view of things, I am constrained to comment that, especially in this day and age, the obligation thus imposed might well serve to rehabilitate the public servant image in a badly disillusioned country. Of equal significance, it seems to me legislative intent might be expected to require, most reasonably, that a public servant will take no more for his public services than is specified for the office.
Measured thusly the charge below was adequate, in light of the fact that, as the judge noted in his charge, defendant did not deny that "it was money that was not due to him by virtue of his official duties."
I am to affirm.
*342 KOLOVSKY, P.J.A.D. (dissenting).
I dissent because in my opinion the trial court was in error in ruling that criminal intent is not an element of the crime described in N.J.S.A. 2A:105-1. That statute reads as follows:
Any judge, magistrate or public officer who, by color of his office, receives or takes any fee or reward not allowed by law for performing his duties, is guilty of a misdemeanor.
It is, of course, true that the language of the statute, read literally, would make irrelevant the intent of the recipient. However, the literal language is not of itself dispositive in resolving the controlling question, whether the legislative intent was to provide criminal sanctions for proscribed conduct without the necessity of proving criminal intent, particularly where (as here) the statute iterates, with some modifications, a common law offense. "That which is properly implied is as much part of our statutory law as that which is expressed." State v. De Meo, 20 N.J. 1, 13 (1955); see also, State v. Hudson Cty. News Co., 35 N.J. 284 (1961).
The question of whether the Legislature intended, in enacting the cited extortion statute  which "had its origin at least as early as 1796," State v. Begyn, 34 N.J. 35, 46 (1961)  to require the corrupt intent of the recipient to be shown as an element of the crime is not an open question. The question was answered in the affirmative more than 100 years ago in Cutter v. State, 36 N.J.L. 125 (Sup. Ct. 1873), and that answer has not been modified or questioned since, either by the courts or by the Legislature. Loftus v. State, 52 N.J.L. 223 (E. & A. 1890  opinion printed only in 19 A. 183); State v. Begyn, supra, 34 N.J. at 46-47 (1961); see also, Clark & Marshall, Crimes (7th ed. 1967), § 12.17 at 898.
So, in Loftus v. State, supra, our highest court said:
The statute of this state (Revision, p. 230, § 23) defines the crime of extortion to be the receiving or taking, by color of an office, any fee or reward whatever not allowed by the laws of this state for doing *343 the office. In Cutter v. State, 36 N.J.L., 125, it was held that this statute must be construed in light of the common law which it designed to reiterate, and that the taking must consequently be with corrupt motive. That this is the sound exposition of the law is not questioned. [19 A. at 184]
In Cutter v. State, supra, Chief Justice Beasley, in rejecting the State's contention that since the statute is explicit in is terms, "the mere taking of an illegal fee [is] a criminal act, without regard to the intent of the recipient," said:
* * * Manifestly * * * the terms of this section are subject to certain practical limitations. This is the case with most statutes couched in comprehensive terms, and especially with those which modify or otherwise regulate common law offenses. In such instances the old and the new law are to be construed together, and the former will not be considered to be abolished except so far as the design to produce such effect appears to be clear. In morals it is an evil mind which makes the offence, and this, as a general rule, has been at the root of criminal law. The consequence is that it is not to be intended that this principle is discarded, merely on account of the generality of statutory language. It is highly reasonable to presume that the law makers did not intend to disgrace or to punish a person who should do an act under the belief that it was lawful to do it. And it is this presumption that fully justifies the statement of Mr. Bishop, "that a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act." 1 Crim. Law, § 80.
This doctrine applies with full force to the present case. If the magistrate received the fees in question without any corrupt intent, and under the conviction that they were lawfully his due, I do not think such act was a crime by force of the statute above recited.
The trial court's reliance on State v. Weleck, 10 N.J. 355 (1952), as authority for its ruling was unwarranted. That case involved an attack on the sufficiency of an indictment charging a borough attorney with an attempt to extort, by demanding $15,000 in installments from the victim, under a promise "corruptly to exhort and influence" the governing body to amend a zoning ordinance. No question was raised as to the sufficiency of the allegation of a corrupt motive; the issues presented were bottomed on other alleged deficiencies *344 in the indictment, and it was on that background that the court said:
It thus appears that the essential elements of the crime of extortion, both under the statute and at common law, are (1) an officer (2) by color of his office (3) taking money (4) that is not due him. [at 371]
That the omission of any reference to "corrupt intent" in the quoted sentence cannot fairly be interpreted as a change in the rule promulgated in Cutter v. State, supra, is evident from the court's citation of Cutter earlier in its opinion:
[A] reading of R.S. 2:127-1 [now N.J.S.A. 2A:105-1] does not reveal any plain intention on the part of the Legislature to alter or abolish the common law crime of extortion. In the absence of such intention the statute must be considered with reference to the common law, Cutter v. State, 36 N.J.L. 125, 126 (Sup. Ct. 1873); Loftus v. State, 52 N.J.L. 223 (E. & A. 1890  opinion printed only in 19 A. 183); State v. Norton, 23 N.J.L. 33 (Sup. Ct. 1850); and State v. Ellis, 33 N.J.L. 102 (Sup. Ct. 1868). [at 371]
Further, any possible question whether Weleck was intended to change the preexisting interpretation of the statute was eliminated by the court's later opinion in State v. Begyn, supra, in which the court emphasized that the statutory purpose was
* * * to penalize the officer who non-innocently insisted on a larger fee than he was entitled to or a fee where none was permitted or required to be paid for the performance of an obligatory function of his office. [34 N.J. at 46; emphasis supplied]
including, as expanded by the later cases, an officer who received such payments for performance of a discretionary act or "for not doing his duty." 34 N.J. at 47. Begyn expressly recognized the continued viability of the necessity of showing a criminal intent:
The proof of receipt of a knowingly unlawful payment in connection with his duties is enough and furnishes the necessary criminal intent. [at 47]
*345 In concluding that we are bound by the long-settled interpretation of the extortion statute, I do not suggest that I approve of permitting public officers or employees to accept gifts from members of the public they are obligated to serve. That practice is undesirable and improper, and has been so recognized by administrative regulations which are being adopted with increasing frequency to prohibit the practice. See, for example, the prohibition against the giving of gratuities by attorneys and parties set out in R. 1:16-2, a court rule originally adopted in 1961.
However, as improper as the practice is, the receipt of such gifts is not a crime unless its receipt is under circumstances proscribed by a criminal statute  and here, as I have shown, the applicable statute requires a showing of corrupt intent.
As Chief Justice Weintraub said in his concurring opinion in State v. Cohen, 32 N.J. 1 (1960):
Needless to say, I do not admire immorality. But the equation of immorality with criminality is something else. Men may not agree upon what is immoral. More than that, opinions may divide upon what immorality is worthy of the heavy hand of criminal liability. The State wisely leaves much to the sanction of private contempt and censure. Few of the Ten Commandments found their way into criminal law. I could not agree that a public officer is guilty of crime in office if he fails to honor his mother or father, or takes the name of God in vain, or covets the house, wife, or anything else that is his neighbor's, or labors on the Sabbath as some judges find they must. The question whether immorality shall be denounced as criminal falls solely within the province of the Legislature, the spokesman of the social conscience. Criminal law is no place for judicial ingenuity and invention. [at 11; emphasis supplied]
Defendant was therefore entitled to a charge that, in order to return a verdict of guilty, the jury must find that defendant acted with a corrupt intent; that he knew that the payment made to him was unlawful. In my opinion, the court's refusal to so charge requires a reversal and a remand for a new trial.
*346 I agree with the majority that there is no merit to defendant's contention that the jury should have been told that "demand of an illegal fee, present or reward must be demonstrated by the State to sustain a conviction under N.J.S.A. 2A:105-1." Although most of the reported cases involved situations in which the recipient had first demanded the payment which he then received, and that fact was referred to in the court's opinions, there is no requirement that a demand be shown. Proof of receipt by an officer of a knowingly unlawful payment is sufficient. State v. Begyn, supra, 34 N.J. at 47; "it is no defense that he accepted it merely as a `tip or gratuity.'" Perkins on Criminal Law (2d ed. 1969), at 370.
Further, I agree that the court properly denied defendant's pretrial motion to dismiss the indictment on the alleged ground "that the State engaged in discriminatory selective prosecution of the defendant."
I would reverse and remand for a new trial.
NOTES
[1] According to defendant, he was on official business at a building site of U.S. Home on a date he believed was December 24, 1970, when Mr. Frank gave him an envelope, saying: "* * * on behalf of the Company this is their way of saying Merry Christmas, Merry Christmas, Ed. You may purchase the type of Scotch that you like." Defendant's best recollection was that the envelope, when opened, contained $150. He used it to purchase a case of Scotch. He denied that he had solicited the gift and said that he had no prior knowledge that he was to be given it.

He explained the reference in his conversation with the troopers to the "good service rendered U.S. Home" to his action in scheduling requested inspections as quickly as his time would permit instead of taking all the time allotted to him under governing regulations. He insisted that receipt of the gift in nowise affected the honest discharge of his duties and obligations as building inspector.