THE STATE v. SAMUEL CROWLEY.

1. A member of the board of chosen freeholders is a county officer, within the meaning of Section 150 of the crimes act, and, as such officer, is subjected to its penalties for violation of its provisions.

2. The county, as the possessor and owner of money and property, and the board of chosen freeholders of the county are not different, but identical; and when the crimes act speaks of money and property of a county, it describes that money and property under the control of such board as trustees of the county.

3. An indictment which states that the defendant was an officer of the county of B., that is to say, a chosen freeholder for the township of W. :.

State v. Crowley.

that he, while he continued such officer, wilfully and unlawfully did obtain from said board of chosen freeholders, that is to say, from the county of B., a certain sum of money not lawfully and justly due him at the time of obtaining the same, sufficiently describes the offence against the statute; it is not necessary to state the means and methods of obtaining such money; nor is such statement necessary for the just protection of the defendant.

4. The wrong which is prohibited by the statute, is obtaining money not due and owing; the means whereby a wrong-doer gets it, is in no way material as an element in the statutory misdemeanor.

5. An indictment charging the obtaining of money from the board of chosen freeholders by certain false pretenses made to the county collector, is sufficient; it is not necessary that the pretenses be made to the person from whom the money was obtained—the money of the principal being had by means of false pretenses made to the agent.

Indictment for misdemeanor. On motion in arrest of judgment.

The defendant was indicted by the grand jury of Burlington county for obtaining money of the said county not justly due and owing to him.

The indictment was removed into this court by *certiorari*, and went down for trial before the Circuit Court of that county, at the September Term, 1876.

The indictment contained seven counts—six of which were framed under the one hundred and fiftieth section of the crimes act, and one, the seventh, under the one hundred and seventy-first section of that act.

Upon the trial, the defendant was found guilty upon the first, second, third, fifth, sixth and seventh counts, and not guilty upon the fourth.

The defendant now moves in arrest of judgment, for insufficiency in the indictment.

Argued at November Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the state, *C. E. Hendrickson.*

For the defendant, *Frederick Voorhees.*

The opinion of the court was delivered by

KNAPP, J. The indictment upon which the defendant was tried contained seven counts, and upon all of them, except the fourth, the jury upon the traverse found a verdict of guilty. On the coming in of the *postea*, the defendant moves in arrest of judgment, writing down for cause—1. That the indictment is not founded upon or warranted by any statute of this state. 2. That said indictment charges no definite offence upon the defendant.

A motion in arrest of judgment is rested upon objections which go to the whole record. It can be successful in this case only if, upon looking into the indictment, it shall appear that no offence indictable by law is, with sufficient certainty, therein alleged against him, upon which judgment can be pronounced. If either count in the indictment sufficiently charges against the defendant an indictable offence, and verdict passed against him on such count, the judgment cannot be arrested.

The first six counts are framed with the purpose of charging the defendant with the commission of acts, which, by the one hundred and fiftieth section of the act for the punishment of crimes, (*Rev.*, *p.* 253,) are made misdemeanors. That section provides that " if any *officer* of any city, township, ward or county of this state, shall hereafter obtain    *    *    * any sum or sums of money," &c., " from any *such* city, township, ward or county, or from this state, not lawfully and justly due to said officer at the time of obtaining the same, he shall be deemed guilty of a high misdemeanor," &c. By the provisions of that section, any officer of a county who obtains from the county of which he is such officer, any of its money not lawfully and justly due to him, is within the offence created, and liable to indictment therefor.

The first count in this indictment sets forth that the defendant was elected to the office of chosen freeholder *for* the township of Washington, in the county of Burlington, and as such, was an officer of the county of Burlington ; and that being such officer, on, &c., at, &c., with intent wilfully and unlawfully to obtain from the board of chosen freeholders of the

State v. Crowley.

county of Burlington, to wit, the county of Burlington, the sum of $168, not lawfully and justly due to him, he presented to the county auditor, under oath of defendant, a claim or account against the county, the particulars of which are stated in the count, amounting in all to $885.63, and obtained the auditor's certificate to the correctness of the account; that he presented the claim so certified to the county collector of the county, whose duty it was to pay the same upon such certificate, and received from him payment of the whole of said claim; of which money so received from the said collector, $168 was not lawfully and justly due to him; and that thereby the defendant, being then an officer of the county, obtained from the board of chosen freeholders of the county of Burlington, to wit, the county of Burlington, the said sum of $168, not lawfully and justly due to him. The second and third counts vary from the first only in the time of the offence and the amounts of money obtained.

The grand jury, in the first three counts, (and in the fifth and sixth, as well,) intended to charge that the defendant was an *officer of the county* of Burlington, and that as such officer, he obtained money *from that county* not lawfully and justly due to him. But the defendant insists that there is a failure in both these essential averments, apparent upon the face of the indictment. It is objected, first, that the statement of the defendant's official character as "a chosen freeholder for the township of Washington," describes a township and not a county officer. Question is therefore made whether a chosen freeholder is included in the class of persons designated in the act as any officer of a county. If the duties and functions of the office are to be regarded in determining its character, rather than the mode of selecting the officer, we will have a test decisive against the view of the defendant.

The chosen freeholder owes no duty or service to, nor does he receive his compensation for services performed from the township in which he is chosen. His office gives him no power to control or dispose of the money or property of the township. The bridges costing less than $50 that the chosen

freeholders of a township may, in their discretion, build or repair, in the township which they represent, are county bridges, and the expense is paid by the board of chosen free-holders of the county. In Burlington, where but a single freeholder is elected in each township, he has not that control over small bridges, but can act only when associated with a like officer from another township. All the official acts and duties of the chosen freeholder are in connection with county interests and affairs purely. The freeholders, acting as a body, have power to vote, grant and raise, by tax upon the county, money for purchasing, repairing and building court-houses, bridges, jails and poor-houses; among their duties are " prose-cuting and defending the rights, defraying the public and other necessary charges, and doing, fulfilling and executing all the legal purposes, objects, business and affairs of the county." They have " power to acquire, possess and hold lands, tene-ments, goods and chattels for the county use." Expenditures of county moneys for county purposes are made under their direction and upon their order. The proper work of these corporate bodies is commonly delegated to subordinate com-mittees of their own members; so that in the construction and repairs of county buildings and structures, and in furnishing supplies to county institutions, these committees, often consist-ing of a single freeholder, have power to expend and to incur public obligation to pay large sums of county money. The committee's own report of labor performed and expenditures made is often the only accessible evidence of the correctness of their claims against the county, and, on their authority, warrants upon the collector for payment are drawn. If un-faithful to his public trust, the individual freeholder lacks not opportune means to " obtain money from his county not law-fully and justly due to him." He has power in his office, by the exercise of diligence and honesty, to lessen public burdens; by corruption or negligence he can render them insupportable. It is the object of the one hundred and fiftieth section of the crimes act, by its severe penalties, to suppress peculation, fraud and negligent squandering of public money, and to en-

·force honesty and fidelity on the part of the municipal officers having ready access to municipal treasuries. In such legislation, it would be quite strange had the dishonest members of a body having so large amounts of public money and property in control as has the board of freeholders, been omitted from its provision. It is, I think, not less strange to suppose that he is not included in the broad terms of the act, as one of the ·officers of the county, subjected to its penalties for violation of its provisions. In a very limited sense, a chosen freeholder may be called a township officer, but in a broader, stronger sense—in juster terms—in the common understanding, and unquestionably, within the meaning of the said act, he is an officer of the county.

Criminal ·statutes must be strictly interpreted, but courts must search for the will of the legislature, and the rule is not violated in giving to words their full and popular meaning. ·*State* v. *Thatcher*, 6 *Vroom* 445.

It was not necessary that this class of officers be named by their office to reach them ; the use of a general term which will include them is sufficient. The act says, " any officer" ·of the county ; a freeholder is an officer of the county, and the indictment, therefore, properly charges the defendant as an officer of the county.

It is objected again to the first three counts, that the money ·which the defendant is charged with obtaining, is not the money of the county, but the money of " The Board of Chosen Freeholders of the county of Burlington," a corporation not mentioned in the act ; that the averment under the *videlicit*, " from the county of Burlington," is variant from and repugnant to the statement " from the board of freeholders," &c., which immediately precedes the *videlicit*. The defendant ·contends that the money of the board of chosen freeholders of a county is not, within the meaning of the act, the money ·of the county. Should this view be acceded to as the correct ·one, it is quite clear that the statute is nugatory, so far as re-·spects county officers. The county has no money other than ·that which the board of freeholders owns and holds for county

use, and it would therefore be impossible to obtain money from a county. And will not a like objection arise upon every indictment, under that act, against a city or township officer, and be entitled to equal force with this?

A county, like a city or township, has money and property only in its corporate capacity. The name by which that municipality is designated is "The Board of Chosen Free-holders" of the county. The county, by that name, holds title to all the property, real and personal, which pertains to the county; in that name and through these chosen trustees of the corporation, the county transacts all its business, performs all its functions and duties, and asserts its rights; it imposes taxes upon the political divisions for the support of county institutions and the payment of county obligations. It is the *corporation of the county*, and is frequently so designated in the act which provides for the organization of the board of freeholders. All public officers, or others, having money or property in their hands belonging to or for the use of the county, must account for it to the board of chosen freeholders; the financial officer of the county—the county collector—who disburses the county funds, does so only upon the order of the freeholders; the only money the board of freeholders disburses, or has control over to disburse, is the money of the county. The county, as the possessor and owner of money and property, and the corporation called the board of chosen freeholders of the county, are not different, but identical; and when the act speaks of the money and property of a county, it describes, by appropriate and unmistakable terms, that money and property which is in the control and disposition of the board of chosen freeholders, as trustees of the county, as clearly and certainly as when it speaks of the money and property of a city, it describes the money and property which the mayor and aldermen of the city, or the corporation, by its proper corporate name, owns and has control over. To yield to the contention of the defendant would be to make the act, in its entire scope, nugatory, and that by denying to its words their clear meaning. I am of opinion, therefore, that the ob-

State v. Crowley.

jections urged against the first three counts in the indictment must fail.

This conclusion upon the counts under consideration is sufficient to support a judgment upon the indictment. But I regard each of the several counts as good and sufficient in law.

In the fifth and sixth counts the offence is charged in the words of the statute. This, as a general rule, is sufficient in statutory misdemeanors, and I see no reason for making the present an exception to the general rule.

Everything necessary to constitute the offence, must be set forth in the indictment with such certainty as to identify it, so that a party may not be indicted for one thing and tried for another, and to the end that the defendant may know what crime he is called upon to answer, that the jury may be able to render an intelligible verdict, and the court a proper judgment, and that the defendant may be able to plead, with proper averments, his conviction or acquittal in bar of another prosecution for the same offence. *People* v. *Taylor*, 3 *Denio* 95.

In the two last counts mentioned, it is charged that the defendant, at the time of the commission of the offence, was an officer of the county of Burlington; that is to say, a chosen freeholder for the township of Washington, in said county. It charges that the defendant, at a certain time and place, and while he continued to be such officer, wilfully and unlawfully did obtain from the board of chosen freeholders, that is to say, from the county of Burlington, a certain sum of money, being the sum of $168.32, not lawfully and justly due to him at the time of obtaining the same. The offence is set forth in the words of the act, with averments specifying defendant's official character; the amount obtained; that it was obtained from the corporation of which he was an officer; that the money was not lawfully or justly due to him at the time; and that his act was wilfully done. Unlike the other counts, the means and method of obtaining it are not set forth. I do not think this necessary for the just protection of the defendant.

In State *v.* Stimson, which was an indictment under the

statute making it a high misdemeanor for the cashier of any incorporated bank knowingly to overdraw his account with the bank, it was held by this court, in an opinion by Chief Justice Green, that an indictment charging the offence in the words of the statute was sufficient, and that it was unnecessary to state the manner of overdrawing, or by whose check or draft, or to state in what funds the overdraft was made. 4 *Zab.* 478.

Under an English statute to punish the offence of stabbing, cutting and wounding, with intent to maim, an indictment charging the defendant with " wounding," in the words of the statute, was held sufficient, without stating the instrument used to inflict the wound. *Earles' case,* 2 *Lew. C. C.* 133 ; and see cases in *Note* 3, § 629, 1 *Bish. Cr. Prac.,* to the same effect.

The case of *State* v. *Malloy,* 5 *Vroom* 410, cited on the argument, was decided upon the ground that essential words, descriptive of the offence created by the statute, were omitted in the indictment, and no words of equivalent meaning used. The case of *State* v. *Gibbons,* 1 *South.* *40, also cited, was decided on the same ground.

The wrong which is prohibited is obtaining money not due and owing. The means whereby a wrong-doer gets it is in no way material as an element in the statutory misdemeanor.

If the means must be stated in the indictment, the proofs should agree with the averments, to render the statement of any service to the defendant. Should the courts demand this of the grand jury, in view of the frequent difficulty of procuring certain and exact knowledge of the fraud-doer's ways in reaching his purpose, it would tend rather to encourage the public frauds which the legislature designed to put an end to. It certainly would not aid in their suppression. Trial would be controversies over variance in averments of means, and the proof to sustain them with the substance of guilt, might be scarcely denied or conclusively proved.

Such certainty in criminal pleading should be required as will fully apprise the defendant of the crime charged against him, and enable him without embarrassment, through want

of such certainty, to marshal and present his substantial de-
fences.   But courts are not bound to arm guilty men and
hedge them about with *technical* defences, under the guard
and cover of which they must escape deserved punishment.

The chances of convicting an innocent person upon an in-
dictment under the statute in question, which omits to state
the means, are not superior to those under one that contains
such averment; that the opposite may be or is true of a guilty
man, none should lament.

The last count in the indictment is for obtaining money
from the board of chosen freeholders of the county of Bur-
lington, by certain false pretences made to the county collector
of the said county of Burlington.   It is not necessary that the
pretences be made to the person from whom the money was
obtained; false pretences to an agent, by means of which the
money of the principal is had, is sufficient.   *Wharton's Cr.
Law*, § 2145, *notes*.

The objection that it is impossible that defendant could
have obtained money from the board of freeholders, is
grounded upon the notion that the Burlington county free-
holders, by force of the provisions of the act of 1872, (*Pamph.
Laws, p.* 787,) cannot hold or own *any money*.

The act provides for the election of the county collector,
and also of a county auditor, and directs special modes of
keeping and disbursing county moneys, but I find nothing
therein that takes away or diminishes their right or power in
common with like corporations throughout the state, to hold
real and personal property for the use of the county.

The motion in arrest of judgment must be denied.