92 N.J. Super. 397 (1966)
223 A.2d 638
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THEODORE GIBSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1966.
Decided October 28, 1966.
*398 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Robert L. McManus argued the cause for appellant.
Mr. George A. Franconero, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Defendant Theodore Gibson and one Sydney King were convicted, after trial by jury, of selling heroin to Thomas Lyons in violation of R.S. 24:18-4, which provides:
"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized by this chapter [the `Uniform Narcotic Drug Law,' (Drug Law) R.S. 24:18-1 et seq.]."
Lyons is a Newark policeman and was working as an undercover agent. There is no claim that the alleged sale was authorized under the statute. Rather, defendant Gibson denied *399 any participation in the sale and offered evidence in support of an alibi. By its verdict the jury found to the contrary and accepted Lyons' identification of Gibson as one of the sellers.
On this appeal by Gibson, he argues that the trial court erred in not charging the jury, although requested to do so, that one of the elements of the crime which the State had to prove was that Gibson "had an intent to commit the crime charged," "a state of mind to do the evil act which the statute proscribes." The quotations are from defendant's requests to charge.
It would have been improper to give the requested charge. A mens rea is not an element of the statutory offense here involved.
It is, of course, true that at common law "the constituents of a criminal offense * * * are an evil intention and an unlawful act." State v. Labato, 7 N.J. 137, 149 (1951).
"But it is within the competency of the lawgiver, in the common interest, to declare an act criminal irrespective of the knowledge or motive of the doer of the act. The Legislature may make the doing of the prohibited act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act; and in such case only the doing of the proscribed act need be shown. [citations omitted] The criminal mind is not essential where the Legislature has so willed. The doer of the act may be liable criminally even though he does not know the act is criminal and does not purpose to transgress the law." (Ibid., at p. 149)
See also Morss v. Forbes, 24 N.J. 341, 358 (1957); State v. DeMeo, 20 N.J. 1, 8 (1955).
We are satisfied that in enacting R.S. 24:18-4 the Legislature has made the sale of narcotics (unless it falls within listed exceptions not pertinent here) unlawful and criminal without regard to a criminal intent. See United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) interpreting an analogous provision of the Federal Narcotic Act of 1914; see also Commonwealth v. Gorodetsky, 178 Pa. Super. 467, 115 A.2d 760 (Super. Ct. 1955), involving the Pennsylvania Anti-Narcotic Act of 1917.
*400 The issue is one of statutory construction to ascertain the meaning of the legislative body, since there are no words in the statute expressly indicating that a criminal intent is required. Morss v. Forbes, supra, at p. 358.
The prohibition of the act is simple and clear: no one shall sell any narcotic drug except as authorized by the Drug Law. "There is nothing in the nature of the act prohibited from which the court can say, in the face of the Legislative language, that it was not the intention to make it applicable to every one who should violate its letter." Halsted v. State, 41 N.J.L. 552, 597 (E. & A. 1879).
To adopt a contrary construction would hamper the enforcement of the Drug Law and ignore the legislative purpose in enacting it.
"There is no question that the primary purpose of passing the Drug Act was to suppress illegal narcotics traffic. The statute was passed as an all-out offensive to combat the drug evil by eliminating sources of supply. Every step in the scheme of illegal distribution was made a violation of section 4 [R.S. 24:18-4]." State v. Reed, 34 N.J. 554, 564 (1961)
In State v. Reed the court ruled that R.S. 24:18-4 "proscribes the unauthorized possession of narcotics for any purpose  including possession for the possessor's imminent consumption," pointing out that
"* * * if the Legislature intended the Act to encompass only possession with intent to sell, it could easily have said so. Why then was the unqualified term `possess' used? Undoubtedly, to facilitate enforcement. It is well known that it is extremely difficult to apprehend and convict drug traffickers. Illegal transfers do not take place under the eyes of the police. They are clandestine operations carefully guarded from official scrutiny. The proscription of possession, without more, facilitates the enforcement of the law against traffickers by eliminating the burden of proving a transfer. If possession is interpreted not to include possession for imminent personal use, the purpose of facilitating enforcement against traffickers would be seriously hindered." (at p. 565)
These comments are equally applicable to the issue here presented.
*401 Defendant also contends that the trial court erred in denying a mistrial when Lyons referred to a previous purchase of narcotics by him from the codefendant King. The evidence was admissible as against King to establish identity. State v. Neff, 67 N.J. Super. 213, 219 (App. Div. 1961). Moreover, the court told the jury that evidence as to what happened between King and Lyons outside of Gibson's presence would not be evidence against Gibson. There was no error in denying the motion for a mistrial.
We have also considered each of the other grounds of appeal argued by defendant and find no prejudicial error in any of the rulings complained of.
The judgment of conviction is affirmed.