127 N.J. Super. 436 (1974)
317 A.2d 746
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL J. HANLY, SR., AND JOHN K. HANLY, DEFENDANTS-APPELLANTS. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN K. HANLY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1973.
Decided April 1, 1974.
*440 Before Judges CONFORD, HANDLER and MEANOR.
Mr. Gregory B. Reilly argued the cause for appellants in A-896-72 (Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys; Mr. Harold Rabner on the brief).
Mr. Irving Vogelman argued the cause for appellant in A-1719-72 (Messrs. Brown, Vogelman & Ashley, attorneys; Mr. Raymond A. Brown of counsel).
Mr. Frank L. Holstein, Deputy First Assistant Prosecutor argued the cause for respondent (Mr. Geoffrey Gaulkin, Huddon County Prosecutor and Mr. Edwin H. Stern, Special Deputy Attorney General, Acting Hudson County Prosecutor, attorneys; Mr. Mart Vaarsi, Deputy Attorney General on the brief).
The opinion of the court was delivered by HANDLER, J.A.D.
In each of these consolidated cases it is contended that the trial court erroneously instructed the jury with respect to the requisite mental state required as an element of the crime charged under N.J.S.A. 2A:135-3. In the case in which both John and Paul Hanly are defendants (A-896-72), they were found guilty of the first count of a six-count indictment. The gravamen of the first count was that John Hanly, while holding the county office of Superintendent of the B.S. Pollak Hospital, and defendant Paul Hanly, knowingly and willfully obtained and assisted *441 in obtaining approximately $6,002.21 for Paul Hanly and one Ruby Lee McLeod, which moneys were not lawfully and justly due these individuals in that no services were rendered by them to or for the hospital. The remaining counts of the indictment similarly charged defendant John Hanly and his wife Virginia Hanly with obtaining county moneys for Hanly and other named individuals, which moneys were not lawfully and justly due because no services were furnished the hospital in exchange for these payments. The jury acquitted Virginia Hanly on these remaining charges but was unable to reach a verdict with respect to her husband. In the companion case (A-1719-72) it was charged in two counts that John Hanly, while holding the same office knowingly and willfully obtained for one Teresa Monti approximately $6,276.01 and for one Rose Alviani approximately $5,211.86, in county funds, which were not lawfully and justly due these persons because neither had rendered services to or on behalf of the hospital. Hanly was convicted on both counts under this indictment.

I
The crime involved in both cases is set forth in N.J.S.A. 2A:135-3, viz:
Any person holding a public office, position or employment of this State or of a county, municipality, or school district, who willfully and knowingly obtains, or counsels, aids, assists, or procures in obtaining for any other person from the State, or from any such county, municipality, or school district, any money, notes, bonds, scrip, securities or other thing of value not lawfully and justly due to such person holding a public office, position or employment of this State or of a county, municipality, or school district or such other person at the time of obtaining the same, is guilty of a high misdemeanor.
In the case involving both Hanlys (A-896-72) the State presented evidence that Mrs. McLeod never set foot in the State of New Jersey and never worked for Pollak Hospital. The State showed that Mrs. McLeod, who resided in Florida, worked for Paul J. Hanly, Sr. as a domestic in his home at *442 Bal Harbor, Florida, for part of the time that she was on the payroll of Pollak Hospital and received payroll checks of the hospital. Testimony was also elicited with regard to the issuance of the checks for these persons and the procedures involving certification by John Hanly of "payroll exception sheets" which were used at the inception, termination, time of salary increment or time of absence of any of the employees. The defense adduced evidence to establish the good character of the defendants and to establish facts showing the past practice with respect to the use of domestics by superintendents of Pollak Hospital.
The other case involved payments made to Rose Alviani and Teresa Monti for "no show" jobs at Pollak Hospital. Much the same testimony as was introduced in the first case with regard to payroll procedures, the payroll exception sheet and authorizations of John K. Hanly was introduced at this trial. Teresa Monti, who had, prior to the time that this trial took place, pleaded guilty to a violation of N.J.S.A. 2A:135-3, testified for the State.
In the trial of A-1719-72 the judge instructed the jury as follows:
You will note that the statute requires that the person charged with the crime willfully and knowingly obtained or aided or assisted in obtaining the moneys for this other person from the County of Hudson. By knowingly and willfully, those two elements, the law requires that the intent ____ that the defendant intended to act as is charged. In other words, he must do so intentionally. You must determine whether the acts were performed with full knowledge of the facts in a conscious or purposeful manner without legal justification or excuse and that the acts, for example, were not the result of negligence, mistake or inadvertence, because that would be just the opposite of knowledge and willfulness. In other words, if the defendant did what was charged as the result of negligence, mistake or inadvertence, he could not be guilty under this statute. He must do it with knowledge, and he must do it willfully and it must have been performed by him with his free and untrammeled will.
Now, once it is shown that the defendant John Hanly, and shown beyond a reasonable doubt, intended to act in a manner which is proscribed by the statute, it is immaterial that he did not believe that his conduct violated the law, nor is it essential for the State in *443 this case to prove that the defendant had a corrupt motive or that he profited personally. So long as he violated the statute knowingly and willfully, he's guilty of the offense.
Therefore, to summarize, the State must prove beyond a reasonable doubt in order to secure a conviction as to the first count (1) that Teresa Monte obtained the salary from Hudson County without performing any work therefor; (2) that the defendant John Hanly, as Superintendent of the hospital, obtained, or aided or assisted in obtaining for her the moneys from the County which were not due her; and (3) that he did so knowingly and willfully. As to the second count, the State must prove the same elements beyond a reasonable doubt so far as they pertain to Rose Alviani. And unless the State proves each of these elements which I have just outlined for you as the particular charge under Count 1 and Count 2, the defendant would be entitled to a verdict of not guilty.
It is contended that this instruction and that given in the other case, were defective in that they omitted as an essential element for the commission of the crime, "specific intent," "consciousness of wrongdoing" or the "corrupt intent to violate the law." Defendants in A-896-72, for example, argue that "[t]he statute clearly requires consciousness on the part of the defendant that the moneys he obtained were not lawfully and justly due. This is just another way of saying that the defendant acted with consciousness and knowledge that his acts were in violation of the law and done in bad faith." (Emphasis added). Defendant in the other case states essentially the same point, i.e., "[The court's charge] eliminates from the jury's consideration the crucial issue of whether defendant Hanly knew that the payments were not lawful, or whether his participation was in any way corrupt or done in bad faith with consciousness that such action constituted a violation of the criminal law." His contentions in this respect are reflected in specific requests to charge, offered at the trial, to the effect that a defendant "would not be guilty of the criminal offense * * * unless he is either conscious of the fact that what he is doing constitutes a violation of the law * * *"; and that "[t]he crime charged * * * requires proof of specific intent * * * [i.e.,] that the defendant knowingly did an act which the law forbids, purposely intending to violate the law."
*444 It is clearly within the competence of the Legislature to make the doing of an "act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act." State v. Labato, 7 N.J. 137, 149 (1951); State v. Gibson, 92 N.J. Super. 397 (App. Div. 1966). Likewise, it is within the legislative province to prescribe the degree of culpability required in order to establish the violation of a given statutory prohibition. Cf. State v. Lambertson, 110 N.J. Super. 137 (App. Div.), certif. den. 56 N.J. 479 (1970).
The immediate precursor of N.J.S.A. 2A:135-3, L. 1898, c. 235, § 169, proscribed essentially the same conduct covered in the current enactment but did not specifically contain the language that such actions be performed "willfully and knowingly." Thus, as first conceived this statute was susceptible of an interpretation which would sanction absolute criminal liability without a requirement of a corrupt or criminal intent or purpose. Cf. Halsted v. State, 41 N.J.L. 552 (E. & A. 1879); State v. Crowley, 39 N.J.L. 264 (Sup. Ct. 1877).
Significantly, the statute was amended in 1960 to modify the word "obtains" with the adverbs "willfully and knowingly." L. 1960, c. 97, § 1. These changes, defendants contend, evince a legislative intent that the proscribed criminal act requires the element of moral culpability, that is, a "corrupt intent to violate the law."
Defendants rely on Cutter ads. State, 36 N.J.L. 125 (Sup. Ct. 1873). The court construed the forerunner of our extortion statute, N.J.S.A. 2A:105-1, and held that a public official could not be convicted under that statute without knowledge that payments he received were illegal. Id. at 126. The extortion statute construed in Cutter appears to have been reiterative of the common law. State v. Begyn, 34 N.J. 35, 46 (1961).
Reliance is also placed on Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1962). It was held that under 18 U.S.C. § 641, which prohibits knowing conversion *445 of federal property, defendant was entitled to assert as a defense his mistaken belief that the property he took was abandoned. The particular statute was found to be a codification of the common law offense of larceny and thus was held to require the same mens rea as the common law offense. See Cutter ads. State, supra 36 N.J.L. at 127.
Here, taking the quoted charge, the trial court in A-1719-72 did convey to the jury that defendant must be shown to have obtained or assisted in the obtaining of moneys with the knowledge that the moneys were not lawfully or justly due. The charge in the other case did not similarly indicate to the jury that such knowledge was essential. To the extent that this charge did not advise the jury that knowledge by defendants that the moneys were not lawfully or justly due was essential, that error is harmless beyond a reasonable doubt in light of the evidence. The record demonstrates convincingly, in both cases, that payments to the recipients, as charged in the respective indictments, were not in exchange for any services rendered the hospital nor otherwise authorized, and that defendants obviously knew this.
What was not charged in these cases was the additional element that defendants were required to know or be conscious that their conduct was a violation of the law. Cf. State v. Pruser, 127 N.J.L. 97 (Sup. Ct. 1941). Contrary to the thesis advanced by defendants, it would appear that the purpose of the 1960 amendment was to foreclose strict criminal liability which could be imposed without regard to a defendant's mental state, as where a defendant through accident, inadvertence, mistake or ignorance performed the prohibited act. The possibility of such a conviction was effectively eliminated by requiring that, to be criminal, the proscribed act be performed by one with knowledge and willfulness, that is, by one who is acting with volition rather than accidentally, and with full knowledge of all of the operative facts.
*446 In Morss v. Forbes, 24 N.J. 341 (1957), the court held that a statute prohibiting willfull and malicious acts did not require a specific purpose to violate the law:
The ordained inquiry is whether the act condemned was committed with a full knowledge of the facts, in a conscious and purposeful manner, without legal justification or excuse. It must not be the produce of inadvertence or negligence or any state of mind other than a free and untrammeled will. This is the definition of criminal intent embodied in the words "willfully and maliciously," as used in this statute. The accused must intend to act in the way proscribed by the statute, but it is immaterial that he does not know or believe his conduct violates the law.
Even positive belief that the act is lawful should not exempt the doer from criminal responsibility. Consciousness of unlawfulness is not essential. * * * If ignorance were a good defense, the administration of the penal law would again depend upon the well-nigh impossible ascertainment of hazy and amorphous mental conditions and opaque logic. When, with a clear knowledge of all the facts, one deliberately and intentionally does an act in violation of a positive law, cognizant of its existence, he cannot be excused on the basis that his animating desire was essentially praiseworthy. * * * Id. at 359.
In State v. Lambertson, supra, the court ruled that N.J.S.A. 2A:135-8 did not require a specific intent or consciousness on the part of defendant that his acts were unlawful. Cf. State v. Boncelet, 107 N.J. Super. 444, 451-452 (App. Div. 1969). See also, State v. Russell, 119 N.J. Super. 344, 351 (App. Div. 1972).
These considerations militate against the construction urged by defendants, that is, that their obtaining of moneys for other persons must have been accomplished with a consciousness on their part that this violated the law. It cannot be overemphasized that the censured conduct appertains to public officials, who are "under an inescapable obligation to serve the public with the highest fidelity." Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474, cert. den. 344 U.S. 838, 73 S.Ct. 75, 97 L.Ed. 652, reh. den. 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952). Public officials are charged with the obligation to lawfully perform fundamental duties of their office. Cf. State v. Weleck, 10 N.J. 355, 366-369 (1952).
*447 The charges herein, in light of the evidence, fairly placed before the jury the questions of whether defendants obtained or assisted in obtaining county funds with the knowledge that these moneys were not lawfully or justly due and whether they undertook these acts purposefully. The court properly and adequately charged, in accordance with the standards enunciated in Morss v. Forbes, supra, that, in order for the crime to be established, it must be shown that the acts were committed with full knowledge of the facts and in a conscious and purposeful manner, with the intent to act in the way proscribed by the statute, rather than from inadvertence or negligence. Specific intent in the sense of consciousness of wrongdoing, or a purpose to violate the law or a corrupt motive was not essential.

II
Several other issues are raised by defendants in case A-896-72. It is asserted that defendants were deprived of a fair trial and effective representation of counsel because of the court's failure to apprise defense counsel prior to their summations of its charge on the meaning of criminal intent.
The root of this complaint was counsels' expectation that the court would instruct the jury as it had in a previous trial which ended in a mistrial. The trial judge there charged that consciousness of wrongdoing was required. There was thus a dramatic shift in the opinion of the court on the critical issue of the meaning of knowledge. Counsel undoubtedly relied on the position expressed in the earlier trial and programmed their summations accordingly.
It is to be emphasized that under these circumstances elemental courtesy and fairness should move the trial court to notify counsel in advance that the court has changed its views with respect to the elements of the crime so that counsel would have the opportunity to argue the point and prepare and try their case accordingly. We, nevertheless, conclude that the court's failure in this respect does not warrant a reversal.
*448 Counsel may, of course, explain propositions of law to the jury if this is reasonably necessary for a proper understanding of the evidence. Cf. State v. Hipplewith, 33 N.J. 300, 315 (1960); Annotation, "Counsel's Right in Criminal Prosecution to Argue Law or to Read Lawbooks to the Jury," 67 A.L.R.2d 245 (1959). Counsel does not have the right, however, to project or persist in a mistaken presentation of the controlling legal principles. United States v. Sawyer, 143 U.S. App. D.C. 297, 443 F.2d 712, 714 (1971). Cf. State v. Hipplewith, supra; State v. Ernst, 32 N.J. 567, 574 (1960), cert. den. 364 U.S. 943, 81 S.Ct. 464, 5 L.Ed.2d 374 (1961). Moreover, counsel is not entitled to rely upon the rulings in a previous trial. Franklin Discount Co. v. Ford, 27 N.J. 473, 492 (1958); Allaire v. Allaire, 39 N.J.L. 113 (E. & A. 1876); See Miller v. Linde, 33 N.J. Super. 41, 45 (App. Div. 1954). Thus, while counsel were disarmed by the court's turnabout here, our examination of the record convinces us that this circumstance did not have any determinative impact on the jury's deliberations or divert it from a full and proper consideration of the evidence governed by correct legal principles.
Another argument is that the trial court erroneously eliminated from the jury's consideration certain evidence bearing upon defendants' state of mind. It is contended that there was evidence relating to previous payments to domestic servants of hospital superintendents for personal services which were not performed at the hospital itself; and that with respect to count I of the indictment, such evidence would permit an inference that defendants reasonably believed that Ruby Lee McLeod, the domestic servant of Paul Hanly, who was the Commissioner of Institutions and Agencies, could be paid as a hospital employee for personal services rendered to Paul Hanly's family at their Florida home.
The trial court properly rejected this theory since there was no credible or relevant evidence in the nature of a custom *449 or practice which could otherwise be applied to domestics working for Paul Hanly in Florida. A court is not obliged to charge a defense based upon such feeble evidence. Cf. State v. Artis, 57 N.J. 24, 30 (1970), remanded 60 N.J. 60, cert. den. 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972).
A further argument is made that the statute by its inclusion of the phrase "not lawfully and justly due," is unconstitutionally vague on its face and as applied. It is suggested that only by construing the statute so as to require "consciousness of wrongdoing" may it be spared from constitutional infirmity. The statute including the phrase "not lawfully and justly due," has long been in force. L. 1898, c. 235, § 169. This and comparable statutes have been the subject of judicial application. State v. McGovern, 84 N.J.L. 444 (Sup. Ct. 1913); State v. Codington, 80 N.J.L. 496 (Sup. Ct. 1911), aff'd 82 N.J.L. 728 (E. & A. 1911). See, e.g., State v. Crowley, supra. The courts have consistently upheld statutes drafted in relatively general terms, where, as here, the forbidden conduct was sufficiently specified. See, e.g., State v. Hudson Cty. News Service, 35 N.J. 284 (1961); State v. Joas, 34 N.J. 179 (1961). We are of the view that the statutory prohibitions of N.J.S.A. 2A:135-3, inclusive of the phrase "not lawfully and justly due," adequately forewarned defendants that the conduct related in the indictment would expose them to criminal sanctions.
Defendants contend that the trial court failed to instruct the jury as to the meaning of the term "not lawfully and justly due." We point out that defendants made no request to charge in this regard nor did they raise any objection to the sufficiency of the charge on this account.
While the court did not furnish the jury with any separate definition of the term "justly due," the indictment itself specified that it was the failure to render any services for the hospital which was the basis for the charge that moneys paid to Paul Hanly and Ruby McLeod were not justly due. *450 It reasonably emerges from the charge that the jury was required to consider whether any services had been rendered to or on behalf of the county by these individuals and, in this sense, determine whether such moneys were justly due them.
The trial court explained to the jury that a use of county funds for the employment by a superintendent of household help at his private home outside the confines of the hospital building is unlawful when not authorized by the county board of freeholders. Defendants assert that by its instruction the court preempted the jury from determining an ultimate issue of fact, namely, whether the payments were unlawful. We disagree. The court left to the jury the fact question of whether such payments actually occurred. Its instruction that such payments  if they occurred  were unlawful did not trench upon the jury's domain since this involved a question of law properly settled by the court. Cf. State v. Schneiderman, 20 N.J. 422 (1956). We are also satisfied that the State sustained its burden of proof that such payments were not lawfully or justly due by introducing evidence that there was no official authorization therefor, especially in the absence of proofs to the contrary. Cf. State v. Blanca, 100 N.J. Super. 241, 248 (App. Div. 1968).
Another contention is that count I of the indictment failed to charge a crime, an issue not raised below. Their argument is that the indictment must charge not only that such funds were not lawfully and justly due "to such other person," i.e., Paul J. Hanly and Ruby Lee McLeod, but also were not lawfully and justly due the public official himself, i.e., John K. Hanly. The point is without merit.
N.J.S.A. 2A:135-3 specifically prohibits two types of conduct: (1) an official who obtains money not lawfully and justly due to said official, or (2) an official who counsels, aids, assists or procures in obtaining money not lawfully and justly due to another person. Count I of the indictment charges clearly that Ruby Lee McLeod and Paul J. Hanly Sr., with the aid of John K. Hanly, received moneys *451 not lawfully and justly due them, in that they obtained hospital payroll checks without rendering services in return for these payments. It was not required that the indictment further specify that the moneys received by Paul Hanly and Ruby McLeod were not otherwise lawfully and justly due John Hanly. Compare State v. Codington, supra, 80 N.J.L. at 496-499, with State v. McGovern, supra, 84 N.J.L. at 445.
Defendants contend that the court erred in denying their motion for acquittal on count I in that there was no evidence that John Hanly "knowingly and willfully" participated in the distribution of the checks to Ruby McLeod other than his signature of the payroll exception sheet certification. The point is without substance. There was ample evidence for submission of the case to the jury. Dolson v. Anastasia, 55 N.J. 2 (1969); State v. Mayberry, 52 N.J. 413 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Franklin, 52 N.J. 386 (1968).
Finally, it is urged that the trial judge erred in denying defendants' motion that he disqualify himself. We find this contention meritless.
Affirmed.