148 N.J. Super. 526 (1977)
372 A.2d 1178
JOSEPH C. WOODCOCK, JR., BERGEN COUNTY PROSECUTOR, PLAINTIFF,
v.
GERALD A. CALABRESE, FRANK BIASCO, PAUL ELIA, GEORGE GUNDERSON, EDWARD KOCHANSKI, SAMUEL MONACO, DEFENDANTS.
Superior Court of New Jersey, District Court  Bergen County.
February 18, 1977.
*529 Mr. Dennis Calo, for plaintiff (Mr. Joseph C. Woodcock, Jr., Prosecutor of Bergen County, attorney).
Mr. Sheldon M. Liebowitz, for defendants (Messrs. Liebowitz, Krafte & Liebowitz, attorneys).
*530 PETRELLA, J.S.C., Temporarily Assigned.
This case was brought under the penalty provisions of the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. (L. 1975, c. 231)[1], sometimes referred to as the "Sunshine Law." Section 12 (N.J.S.A. 10:4-17) allows recovery of fines in a summary procedure under the Penalty Enforcement Law, N.J.S.A. 2A:58-1 et seq. See R. 4:70-1 et seq.
The material facts are essentially undisputed. The court finds that on February 2, 1976, 14 days after the effective date of the Sunshine Law, the Mayor and Council of the Borough of Cliffside Park held an "open caucus meeting." The mayor and five of the six councilmen (defendants herein) were present, and the borough clerk was absent.
One item to be discussed at that caucus meeting was possible amendment of the municipal rent control ordinance and the formula thereunder determining rental increases. The members of the Rent Control Board (the board) were invited to the caucus meeting to confer with the mayor and council on possible changes in the ordinance. The board members arrived mid-meeting. The uncontroverted testimony was that the board was purely advisory, and the ordinance which created it so stipulated.[2]
A newspaper reporter had attended the caucus meeting up to the point when possible rent control ordinance changes were to be discussed with the board. The reporter was then asked to leave the meeting during discussions with the board of potential changes in the ordinance. He refused to do so, relying on a copy of the Sunshine Law which he had in his possession. Apparently neither the governing body nor its attorney had a copy of the statute available that *531 evening. Thereupon, a resolution[3] was hastily passed and he was excluded from the meeting. Initially, defendants tried to take the position that the exclusion was under the provision of the law relating to transactions involving real property, N.J.S.A. 10:4-12(b)(5), although the subsequently prepared minutes of the meeting reflect that he was excluded pursuant to N.J.S.A. 10:4-12(b) (6), relating to tactics and techniques designed to protect the safety and property of the public. As a result of the dispute and confusion no meaningful meeting[4] took place that evening on the rent leveling ordinance because, as a result of the time delay, board members left shortly after the dispute with the reporter ended.

*532 I.
The court must determine whether any specific exclusion from the requirements of the Sunshine Law applies and, if not, whether there was a knowing violation of the act such as would incur penalties under N.J.S.A. 10:4-17.
N.J.S.A. 10:4-12(b) states in part:
A public body may exclude the public only from that portion of a meeting at which the public body discusses:

* * * * * * * *
(5) Any matter involving the purchase, lease or acquisition of real property with public funds, the setting of banking rates or investment of public funds, where it could adversely affect the public interest if discussion of such matters were disclosed.
(6) Any tactics and techniques utilized in protecting the safety and property of the public, provided that their disclosure could impair such protection. Any investigations of violations or possible violations of the law.

* * * * * * * *
N.J.S.A. 10:4-12(b)(5) is inapplicable. That section concerns obtaining interests in real property, funding of public projects and investment matters. It has no applicability to a discussion of proposed changes to a rent-leveling ordinance formula. The defendants argued that subsection (b)(6) of N.J.S.A. 10:4-12 authorized exclusion of the public from discussions of rent control with the board. They reasoned that due to the controversial and political nature of rent control the mayor and council were attempting to protect the citizenry by avoiding widespread public concern or premature rumors of a rental increase, and therefore N.J.S.A. 10:4-12(b)(6) was applicable. In light of the perceived strong emotions accompanying the opposing positions of landlord and tenant, defendants excluded the public from that portion of the caucus meeting, and urge it was for the protection of the "safety and property of the public."
While the wording of this subsection, in the court's view, is not entirely clear, the interpretation suggested by *533 the defendants appears inapposite. Although the first sentence is written in broad generalities, the last sentence of this subsection seems to limit its applicability to situations where violations or possible violations of law occur. It means in that context that a public body may exclude the public in certain exigent police power situations, such as for police power purposes, fire control, civil defense, health matters and riot-related activities, where disclosure of matters discussed could endanger public safety. Even assuming that this subsection might be extended to the situation involved here, the evidence was insufficient to allow the court to find that disclosure of such information would impair the safety of the public or its property. The exact scope of this subsection would certainly be an appropriate subject for legislative clarification. Cf. N.J. Att'y Gen'l Formal Opinion 2  1977 (1/28/77).

II
Having disposed of these arguments it is then necessary to decide whether the Sunshine Law has been violated based on the provisions of the entire act and, if so, whether any such violation was "knowingly."
In considering the applicability here of the Sunshine Act the court has looked to the various provisions of the act and the relevant legislative history. The introductory statement of the act provided one benchmark to determine this intent. See Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66, 73-75 (Law Div. 1975). The following portion of the introductory statement is enlightening:
Section 3 determines the scope of the act by defining "public body," "meeting" and "public business." To be covered, a public body must be organized by law and be collectively empowered as a multi-member voting body to spend public funds or affect persons' rights. Therefore, informal or purely advisory bodies with no effective authority are not covered. Neither are groupings composed of a public official with subordinates or advisors such as a mayor or the Governor meeting with department heads or cabinet members who are not empowered to act by vote. Specific exemptions are provided for the *534 judiciary, parole bodies, the State Commission of Investigation and political party organizations.
To be covered, a meeting must be open to all the public body's members, and the members present must intend to discuss or act on the public body's business. Therefore, typical partisan caucus meetings and chance encounters of members of public bodies are not covered. Specific exemptions are provided for public bodies meeting as a part of a convention and meetings where an effective majority fails to attend. (Emphasis supplied).
This language indicates that certain types of advisory-consultative meetings were not intended to be covered by the act. Moreover, the very language of § 2 incorporates that specific intent directly into law in the final paragraph of N.J.S.A. 10:4-7, headed "Legislative Findings and Declarations":

* * * * * * * *
The Legislature, therefore, declares that it is the understanding and the intention of the Legislature that in order to be covered by the provisions of this act a public body must be organized by law and be collectively empowered as a multi-member voting body to spend public funds or affect persons' rights; that, therefore, informal or purely advisory bodies with no effective authority are not covered, nor are groupings composed of a public official with subordinates or advisors, who are not empowered to act by vote such as a mayor or the Governor meeting with the department heads or cabinet members, that specific exemptions are provided for the Judiciary, parole bodies, the State Commission of Investigation, and political party organizations; that to be covered by the provisions of this act a meeting must be open to all the public body's members, and the members present must intend to discuss or act on the public body's business; and therefore, typical partisan caucus meetings and chance encounters of members of public bodies are neither covered by the provisions of this act, nor are they intended to be so covered. [Emphasis supplied]
The use in both the legislative history and the quoted law itself of the term "such as" clearly indicates that the examples that follow are not meant to be exclusive exemptions, but rather are indicative of those types of meetings which are not intended to be covered by the act, even though not specifically listed in § 7 of the statute (N.J. *535 S.A. 10:4-12). The intent of the statute is to allow officials to meet privately with counselors and advisors in order to discuss policy, formulate plans of action and generally to have an exchange of ideas. Illustrative of this exemption would be a mayor meeting with department heads or advisory boards.
This rationale applies to the present situation where the mayor and council intended to meet and discuss informally an emergent situation and be informed by an advisory board, here the Rent Leveling Board. There is an obvious need for municipal officials to receive information from duly constituted advisory officials or bodies. The Legislature has recognized a methodology whereby governing officials may be provided such information.
The court is aware of an apparent internal conflict within the Sunshine Law. The exemption for advisory meetings in N.J.S.A. 10:4-7 and emphasized in the legislative history is not mentioned specifically in the later exclusion of the public section of the statute, N.J.S.A. 10:4-12. The prosecutor argues that since there is no specific exemption in that section, this results in a knowing violation for which a penalty should be imposed where the governing body knows or should know of the provisions of the law even absent judicial decisions. The court must disagree. There is no basis for finding actual knowledge here, and the lack of clarity in the statute would negate holding that defendants should have known how the law applied in this situation. Legislative enactments are to be read cohesively and harmoniously, if possible, in order to carry out the legislative mandate. Abrams v. Civil Service Dept., 70 N.J. Super. 559, 563 (App. Div. 1961). See also, O'Rourke v. Board of Review, 24 N.J. 607, 610-611 (1957), and State v. Canola, 135 N.J. Super. 224, 235 (App. Div. 1975).
As to that apparent conflict it is observed that N.J.S.A. 10:4-12(b)(1) states:
A public body may exclude the public only from that portion of a meeting at which the public body discusses:

*536 (1) Any matter which, by express provision of Federal law or State statute or rule of court shall be rendered confidential or excluded from the provisions of subsection a. of this section.

* * * * * * * *
This section can be construed in harmony with N.J.S.A. 10:4-7 since the exemption in the latter is also an express provision of a state statute within the language of N.J.S.A. 10:4-12(b)(1). In effect, the exemption for advisory bodies would then be brought within the ambit of the exclusion of the public section of the statute.
A word of caution. The exemption for informal or advisory bodies may appear to some as an invitation to use this as a wedge to circumvent or subvert the laudable purposes of the Open Public Meetings Act. It is clear that the legislative history and mandate for liberal construction of the act provide for that eventuality. The passage of time, experience with the act, court decisions and interpretations will serve not only to narrow areas of ambiguity but also will restrict attempts to avoid the requirements of the act.
But even with a conflict or ambiguity in the statutory provisions, which in this instance would have to be resolved in favor of defendants, in the alternative the issue of whether defendants knowingly violated the Sunshine Law would likewise result in a finding of no knowing violation by defendant mayor and councilmen. The prosecutor has not carried the burden of proof by even a preponderance[5] of the evidence. Penalty suits are generally considered civil in nature, but as former Chief Justice Vanderbilt said in Sawran v. Lennon, *537 19 N.J. 606, 612-613 (1955), are generally strictly construed. On the other hand, N.J.S.A. 10:4-21 calls for liberal construction of the act to accomplish the purpose and policy set forth in N.J.S.A. 10:4-7.
In view of what must be considered the deliberate use of the term "knowingly" by the Legislature in the penalty section of the Sunshine Law, N.J.S.A. 10:4-17, the prosecutor would have to show that defendants knew or should have known the portion of the meeting in question was required to be open to the public.[6] Here the proofs and circumstances do not warrant such a finding. This incident occurred when the act had been effective only 15 days. There were then no decisions interpreting this statute, nor harmonizing the particular statutory sections discussed herein.
The complaint is dismissed, with prejudice and without costs.
NOTES
[1] Approved October 21, 1975 and effective January 19, 1976.
[2] Section XI of the Cliffside ordinance relating to rent control states in pertinent part: "any of the powers herein granted to the Rent Leveling Board are exclusively advisory powers and the action of said Board shall not be deemed final until acted upon by the governing body of the Borough, namely, the Mayor and Council."
[3] Although compliance with N.J.S.A. 10:4-12 was the bare minimum, it is not clear that a formal resolution is actually necessary in order to meet with advisors on a specific question at this type of caucus meeting. Under the circumstances, the compliance here was sufficiently substantial for the type of matter involved. It is not a statutory requirement to cite the exact sentence or word in the statute relied upon to exclude the public from a certain portion of the meeting, but only to state the particular nature of the subject matter to be discussed. Here the action of the mayor and council could also be construed as recessing the open caucus meeting to obtain the opinions of the advisors. Parenthetically it may be noted that N.J.S.A. 10:4-7 also states an intention to exclude from the coverage of the Sunshine Law "typical partisan caucus meetings." Since the meeting under review was of the entire governing body, it does not fit that characterization.
[4] The court rejects defendants' argument that no "meeting" took place since, because of the confusion which arose as a result of the dispute with the reporter, the members of the rent board never got around to discuss the subject intended. This was the uncontradicted testimony and the court finds that there was no business transacted on the subject of the rent control ordinance. N.J.S.A. 10:4-8b defines meeting as "any gathering * * * held with the intent, on the part of the members present, to discuss or act as a unit upon the specific public business of that body." (Emphasis supplied). Although the meeting was aborted as a result of the reporter's protests and ensuing confusion, there was a meeting as the term is generally understood, in that the mayor and council came together "to discuss" specific public business, the borough's rent control situation.
[5] The parties have not addressed themselves to the burden of proof for a violation. See Conservation and Economic Dev. Dept. v. Scipio, 88 N.J. Super. 315, 322 (App. Div. 1965), certif. den., 45 N.J. 598 (1965); cf. Sawran v. Lennon, 19 N.J. 606, 615 (1955). The preponderance of the evidence test was applied since this action would be treated as a civil proceeding. See Conservation and Economic Dev. Dept. v. Scipio, supra, 88 N.J. Super. at 322. Even under this test, however, the prosecutor has not carried his burden to prove the violation was "knowingly" here.
[6] "Knowingly" is defined in Black's Law Dictionary (4 ed. 1968), at 1012, as: "With knowledge; consciously; intelligently, willfully; intentionally." The term connotes consciously and intentionally. See State in Interest of N.L., 69 N.J. 342, 346-347 (1976) and State v. Hanly, 127 N.J. Super. 436, 445 (App. Div. 1974). Cf. State v. Savoie, 67 N.J. 439, 454-461 (1975), and Penna. R.R. Co. v. N.J. Soc. for Prev. of Cruelty to Animals, 39 N.J.L. 400, 401 (Sup. Ct. 1877). 22 C.J.S. Criminal Law § 31(3), at 111, states:

When used in a prohibitory statute, "knowingly" imports something more than carelessness or lack of inquiry. In such statutes it has been held to mean merely a knowledge of the existence of the facts constituting the crime or a knowledge of the essential facts and not to require knowledge of the unlawfulness of the act or omission.